NEWMAN, Trustee, Appellant, v. MERCANTILE TRUST COMPANY et al.

Division One, June 15, 1905.

1. FRAUD: Pleading. A mere charge of fraud, without specification of the acts which constitute the alleged fraud, amounts to nothing in pleading. Proffered evidence that does not tend to prove the fraud charged should be rejected.

2. TROVER: Stock. An action of trover may be maintained for shares of stock in a corporation, and shares of stock and certificates of stock may be treated as synonymous.

3. ———: ———: Conditional Purchase. A trust company, acting for other parties, offered in writing "to purchase a majority or all the shares of the capital stock" of a ferry company, and agreed "to pay therefor on delivery of the certificates for so many of said shares, not less than a majority, as shall be deposited with said company on or before" a certain date, "properly indorsed in blank for assignment and transfer on the

books" of the ferry company, "the sum of five hundred dollars per share;" and the plaintiff, in writing, indorsed on this written proposition, accepted the same, sold to the trust company one hundred shares, which was less than a majority of the stock, and the next day delivered the shares indorsed in blank to the trust company. Within a day or two the news of the deal became noised abroad, and the price of the ferry company stock suddenly rose to $1,500 a share, and the trust company, in order to get a majority of the stock, before paying plaintiff for his, paid other persons the advanced price. *Held*, that the fact that the trust company paid the advanced price to some other parties was no fraud upon plaintiff. Nor, under the contract, was plaintiff entitled after he had delivered his stock, to demand its return to him, and sue the trust company in trover as for conversion, upon its refusal. Nor do the contract and the action of the trust company in retaining the stock authorize a judgment compelling the trust company to pay him $1,500 per share for his stock, either for fraud or conversion. After the agreement was executed and the stock deposited with the trust company, nothing remained for it to do, to make the sale complete, except to accept the stock and pay plaintiff $500 per share therefor, and having done that within the time specified, no fraud was perpetrated upon plaintiff.

4. ———: ———: ———: **Foreign Corporation.** Where a trust company agrees to purchase the stock of a ferry company for a party not disclosed by the written proposition to purchase it, the fact that the party for whom the purchase was made was a foreign corporation, a railroad company, having no license to do business in this State, does not invalidate, or give a fraudulent character to the trust company's offer to purchase the stock of the ferry company, nor make its action in retaining plaintiff's stock, after he had delivered it in accordance with the agreement, a conversion of the stock.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*John W. Noble* and *George H. Shields* for appellant.

(1) Fraud is a question for the jury—the court invaded the domain of the jury. Slight circumstances warrant submission of the issue of fraud to the jury.

Hack v. Rollins, 158 Mo. 182; Bank v. Brunswick & Co., 155 Mo. 602; Tracy v. McKinney, 82 Mo. App. 506; Robertson v. Shepherd, 165 Mo. 360; Paquin v. Millikin, 163 Mo. 79. (2) The second count of plaintiff's petition states a cause of action at common law and is well established in Missouri. Perry v. Musser, 68 Mo. 477; Watriss v. Piera, 36 N. H. 239; Chitty on Pleadings (16 Am. Ed.), 248; Bank v. Tiger Tail Co., 152 Mo. 157; Bank v. Fisher, 55 Mo. App. 51; Norman v. Horn, 36 Mo. App. 422; Turley v. Tucker, 6 Mo. 583; Buddington v. Maderbrook, 17 Mo. App. 577; Beattie v. Lett, 28 Mo. 596; Parker v. Rhodes, 79 Mo. 91; Kniffer v. Blumenthal, 107 Mo. 670; Huner v. McKinney, 3 Mo. 382; Ross v. Clark, 27 Mo. 549; Battell v. Crawford, 59 Mo. 215; Mohr v. Langan, 77 Mo. App. 490; Nanson v. Jacobs, 93 Mo. 331; Koch v. Branch, 44 Mo. 542; Williams v. Wall, 60 Mo. 321; Dusky v. Rudder, 80 Mo. 400; Stephens v. Elwall, 4 Maule & Selw. 259. (3) A declaration for conversion pleading only ultimate facts, states a cause of action and a general averment of conversion is sufficient to admit of any evidence on the trial of the issues joined that tend to prove such conversion. McAllister v. Kuhn, 96 U. S. 89; Budd v. Mutomah & Co., 12 Ore. 275; Wilson v. Commercial, etc. Co., 51 S. C. 541; Beebe v. Knapp, 28 Mich. 58; Bliss v. Cattle, 32 Barb. 323; Hunter v. Hudson, etc., 20 Barb. 493; Johnson v. Wabash, etc. Co., 22 Mo. App. 560; Reilly v. Cullin, 159 Mo. 329. (4) The retention of the check till the last day of the option worked no estoppel on plaintiff. He did not then know that defendants had violated their contract and were paying others, who signed the acceptance of the proposition as plaintiff did, more than five hundred dollars a share, and that defendants had not procured a majority of the stock. Defendants did know it and failed to disclose it. This created a false impression in plaintiff's mind and worked a fraud on him. Stewart v. Wyoming Ranch Co., 128 U. S. 389; Utley v. Donaldson, 94 U. S.

46; Hoffman v. Aetna Ins. Co., 32 N. Y. 405. Consent must be *ad idem*. Hazard v. Ins. Co., 1 Sumner 218; Gottschalk v. Kircher, 109 Mo. 184; Adams v. Cates, 24 Mo. 223; Barrow v. Alexander, 27 Mo. 530; Griggsby v. Stapleton, 94 Mo. 423; Cottrell v. Krum, 100 Mo. 397; Story on Eq. Jur. (13 Ed.), sec. 192; Clinkenbeard v. Weatherman, 157 Mo. 114; Och v. Railroad, 130 Mo. 71; Herman v. Hall, 140 Mo. 276; Livingston v. Strong, 107 Ill. 303; Bridge v. Goldsmith, 143 N. Y. 428; Albany Savings Ins. v. Burdick, 87 N. Y. 40; Strimpton v. Philbrick, 53 Minn. 366; Darnley v. Proprietors, etc., 2 Md. 259; Duncan v. Hoge, 24 Miss. 671. Even money paid will not prevent recovery for deceit. Owens v. Rector, 44 Mo. 389; Ives v. Carter, 24 Conn. 392; Krum v. Beach, 96 N. Y. 398; Vail v. Reynolds, 118 N. Y. 297; Pryor v. Foster, 130 N. Y. 171; Gustafson v. Rustemeyer, 70 Conn. 125. (5) A party induced by fraud to make a contract may rescind and revover back what he paid or sold where the contract originally executory has been performed on his part, and the knowledge acquired subsequently and previous to performance on his part. Parker v. Marquis, 64 Mo. 41; Nilnosek v. Libera, 86 N. W. 100, 83 Minn. 288; Williams v. Chicago Co., 112 Mo. 470; R. S. 1899, sec. 654; Gerard v. St. Louis, etc. Co., 123 Mo. 358; Horwith v. Metropolitan Co., 129 Mo. 629; Hancock v. Bakewell, 139 Mo. 440. (6) The plaintiff had the right to know when he received the check whether the defendants had complied or would comply with the contract; but defendants refused to enlighten him. If the purchaser had not obtained a majority of the stock, or could not obtain it at $500 a share, he was not bound, and if he was not, the seller was not bound. There must be mutuality in the contract to be binding in law. Glass v. Rowe, 103 Mo. 513; Kirtland, etc., Co. v. Ripley, 10 Wall. 339; Johnson v. Tupper, 33 Fed. 530; Stanton v. Singleton, 126 Cal. 657; Sayward v. Houghton, 119 Cal. 545. (7) The contract for the sale of the stock was for

a majority of the stock at five hundred dollars a share, the certificates to be indorsed and delivered before May 5, 1902, before any obligation to pay for the same would arise. This contract was an entirety and unless the purchaser had the certificates on May 5th of a majority of the shares at $500 a share, either party could withdraw. Current v. Fulton, 10 Ind. App. 617; Cravens v. Eagle Cotton Mills, 120 Ind. 6; 7 Am. & Eng. Ency. Law (2 Ed.), 102; Carney v. Chillicothe W. & L. Co., 76 Mo. App. 532; Hollmann v. Conlon, 143 Mo. 369; Green v. Sigua Iron Co., 88 Fed. 213; Wagon Co. v. Crocker, 4 Fed. 577; Eskridge v. Glover, 5 Stewart & P. 264; Bell v. Bowers, 44 Tenn. 311; Bangs v. Loeber, Fed. Cases 840; Hutchings v. Moore, 61 Ky. 110; Sewell v. Wilkins, 14 Mo. 168; Speak v. Sheppard, 6 Har. & I. 85; Robinson v. Harbour, 42 Miss. 795; Vreeland v. Mitchell, 8 Mo. 487; Dwiggins v. Shaw, 20 N. C. 46; Dunham v. Dayton, 3 Ohio Dec. 329; 4 Rawle 6; 4 Watts & S. 527; Piques v. Moseby, 15 Miss. 340; Hamilton v. Thrall, 7 Neb. 210; Mecum v. Railroad, 21 Ill. 533; Gardiner v. Corson, 15 Mass. 500; Dalrymple v. Lauman, 23 Md. 376; Harding v. Gibbs, 125 Ill. 85; Perkins v. Hadsell, 50 Ill. 216. (8) The defendant, the Chicago, Rock Island & Pacific Railway Company, could not buy or hold shares of stock of the Wiggins Ferry Company. Who the purchaser was was unknown to plaintiff till the 5th of May, 1902. This company was not authorized to do business in this State. It could not have been compelled to take plaintiff's stock and he was not bound to sell to it. Wiggins Ferry Company charter; Private Laws Illinois, 1853, p. 193; Ibid. 1857, p. 1146; Ibid. 1867, vol. 1, p. 938; Toomey v. Supreme Lodge, 74 Mo. App. 507; People v. Chicago Gas Co., 130 Ill. 267; Buckeye v. Harvey, 18 L. R. A. 252; Franklin, etc., Co. v. Lewiston Co., 68 Mo. 43; Pearson v. Railroad, 62 N. H. 537; Central, etc., Co. v. Collins, 40 Ga. 382; Hazelhurst v. Savannah, etc., Co. 43 Ga. 13; Milbank v. N. Y. Co., 64 How. Pr. 20; Elkins

v. Camden, etc., Co., 36 N. J. 65; Mackintosh v. Flint & Co., 34 Fed. 615; Franklin Bank v. Commercial Bank, 36 Ohio St. 350; Concord, etc., v. Hawkins, 174 U. S. 364; California Bank v. Kennedy, 167 U. S. 367; McCormick v. Bank, 165 U. S. 549; Scott v. Daniels, 176 U. S. 216; Robinson v. Bank, 180 U. S. 309; Trans. Co. v. Pullman Co., 139 U. S. 24; Car Co. v. Trans. Co., 171 U. S. 138; Logan v. Townsend, 139 U. S. 67; Hotel Co. v. Furniture Co., 73 Mo. App. 137; Ollesheimer v. Mfg. Co., 44 Mo. App. 172; Green's Brice's *Ultra Vires,* p. 95, note; Beach on Corporations, sec. 843; Mallroy v. Oil Works, 86 Tenn. 598; St. Joseph v. Saville, 39 Mo. 460; Hoagland v. Hannibal, etc., Co., 39 Mo. 451; Missouri, etc., Co. v. Hannibal, etc., Co., 35 Mo. 84; St. Joseph, etc., Co. v. St. Louis, etc., Co., 135 Mo. 202; Pearce v. Railroad, 21 How. 441; Railroad v. Smith, 76 Ala. 580; New Orleans, etc., Co. v. Ocean, etc., Co., 28 La. Ann. 174; Baird v. Howard, 51 Ohio St. 57; Farmers', etc., Co., v. Railroad, 150 N. Y. 429; 1 Thompson on Corp., sec. 1102, vol. 4, sec. 5719; Ehrhardt v. Robertson, 78 Mo. App. 410; Thomas v. Richmond, 12 Wall. 355; Spring v. Knowlton, 103 U. S. 49; Sto. Eq. Jur., secs. 298, 700; Railroad v. Railroad, 145 U. S. 393; Garrett v. Kansas, etc., Co., 113 U. S. 330.

*Klein & Hough, Clinton Rowell, Joseph H. Zumbalen* and *Joseph S. Laurie* for respondents.

(1) The ruling of the trial court resulting in plaintiff's nonsuit was correct. The legal effect of the plaintiff's acceptance and cashing of the check for $50,000 sent him by the Trust Company, under the circumstances shown by the evidence, was to complete and close the transaction and thus to bar his right of action. School Board v. Hull, 72 Mo. App. 403; Andrews v. Stubbs Co., 100 Mo. App. 599; Perkins v. Headley, 49 Mo. App. 556; Coal Co. v. St. Louis, 145 Mo. 651; McCormack v. St. Louis, 166 Mo. 315; Nassoily v. Tom-

linson, 148 N. Y. 326; Jackson v. Volkening, 80 N. Y. S. 1102; Goss v. Rishel, 85 N. Y. S. 1045; Railroad v. Clark, 178 U. S. 353; Gas Co. v. Johnson, 123 Pa. St. 576; Truax v. Miller, 48 Minn. 62; Keck v. Hotel Co., 89 Iowa 200; Creighton v. Gregory, 142 Cal. 34; Snow v. Alley, 156 Mass. 193; Bishop, Contracts, sec. 808; Herm. Estop., p. 1172-3, 1196. (2) The contract in question, according to its true construction, is an agreement on the part of the Trust Company to purchase plaintiff's stock at $500 per share, with the condition reserved in favor of the Trust Company that, if it had not obtained a majority of the stock of the Wiggins Ferry Company on or before May 5, 1902, it might, if it saw fit, return the plaintiff's stock to him. The contract was mutually binding from the start, because the promise of the Trust Company, upon the conditions stated therein, was a sufficient consideration to bind the sale. Watjen v. Green, 48 N. J. Eq. 322; Danforth v. Railroad, 93 Ala. 614; Swank v. Nichols, 20 Ind. 198; Dobbins v. Edmonds, 18 Mo. App. 307; Sanford v. Halsey, 2 Denio 235; Ferry Co. v. Jones, 39 N. H. 491; McRae v. Railroad, 12 Ired. N. C. 224; Railroad v. Allen, 112 Cal. 455; Gutlon v. Marcus, 165 Mass. 335; Morrow v. Express Company (Ga.), 28 S. E. 998; Clark on Contracts, pp. 170-1; Anson on Contracts (2 Am. Ed.), p. 95; Mayer v. Dwinell, 29 Ver. 298; Backer v. Jones, 8 N. H. 413; Foster v. Goldschmidt, 21 Fed. 70; 6 Am. and Eng. Ency. Law (2 Ed.), 471; Benj. on Sales (6 Am. Ed.), 569; Ammidown v. Powell, 14 Mo. App. 578. (3) (a) Whether the Chicago, Rock Island & Pacific Railway Company had the right or power to purchase the stock of the Wiggins Ferry Company or not is immaterial in this case. The contract was between the plaintiff and the Mercantile Trust Company, which personally bound itself by the terms of the contract, and there is no question as to the right and power of the Trust Company to purchase the stock. Taylor on Corp. (3 Ed.), sec. 276; 5 Thompson

on Corp., secs. 6023-6; 27 Am. and Eng. Ency. Law (1 Ed.), 377; St. Louis v. Davidson, 102 Mo. 149; Ins. Co. v. Smith, 117 Mo. 261; Bank v. Hunt, 7 Mo. App. 42, 76 Mo. 439; Hill v. Min. Co., 119 Mo. 31; Bank v. Whitney, 103 U. S. 99; Bank v. Matthews, 98 U. S. 621; Riesterer v. Land & Lumber Co., 160 Mo. 141.   (b) The purchase of plaintiff's stock by the Trust Company for the Railway Company was not the doing of business in Missouri by the Railway Company; hence, the Railway Company was not obliged to comply with the Missouri statute relating to foreign corporations to entitle it to the benefit of the contract made by its agent.   Hogan v. St. Louis, 176 Mo. 149; Coal & Mining Co. v. Ladd, 160 Mo. 435; Carson Rand Co. v. Stern, 129 Mo. 381.   (4) The averments of the petition tender no issue of fraud; nor is there any evidence tending to show that there was any fraud practiced on the plaintiff by any of the defendants at any stage of the transactions involved in this case.   Lewis v. Lewis, 9 Mo. 183; Mateer v. Railroad, 105 Mo. 320; Bank v. Rohrer, 138 Mo. 369.   There was no fiduciary relation between the parties.   Crowell v. Jackson, 53 N. J. L. 656; Commissioners v. Reynolds, 44 Ind. 509; Carpenter v. Danforth, 52 Barb. 581; Deaderick v. Wilson, 8 Bax. (Tenn.) 108; Smith v. Hurd, 12 Metc. (Mass.) 371; Gillett v. Bowen, 23 Fed. 625; 1 Cook on Corp. (4 Ed.), sec. 320; Taylor on Corp. (3 Ed.); sec. 698.

BRACE, P. J.—This is an appeal from an order of the St. Louis Circuit Court overruling plaintiff's motion to set aside a nonsuit.

The suit was instituted on the 13th of May, 1902. The defendants are the Mercantile Trust Company, the Chicago, Rock Island and Pacific Railroad Company, John Scullin and Festus J. Wade.

The petition is in two counts.  The first count is as follows:

"Plaintiff states that the defendant, the Mercan-

tile Trust Company, was at the time hereinafter stated and now is a corporation duly organized under the laws of the State of Missouri, providing for the incorporation of trust companies. That the Chicago, Rock Island and Pacific Railway Company was, at the times hereinafter stated, and now is a railroad corporation duly incorporated under the laws of the State of Illinois. That the plaintiff, Louis E. Newman, is and was at the times hereinafter stated the trustee appointed by and acting under the last will and testament of Socrates Newman, deceased, said will having been duly probated in the probate court in and for the city of St. Louis, Missouri, and that plaintiff brings this action in his capacity as said trustee. That heretofore, to-wit, on the 23rd day of April, 1902, plaintiff owned and held as such trustee one hundred shares of the capital stock of the Wiggins Ferry Company, a corporation duly incorporated under the laws of the State of Illinois, and was lawfully possessed of the certificates duly issued for said one hundred shares of stock. That on the 28th of April, 1902, the defendant, John Scullin, a director and president, and defendant, Festus J. Wade, a director of the Wiggins Ferry Company, officially and individually illegally combined with said Mercantile Trust Company and said Chicago, Rock Island & Pacific Railway Company, defendants, to deceive and defraud plaintiff and presented to this plaintiff a paper or offer to purchase said stock, as follows:

" 'The Mercantile Trust Company, acting herein for other parties, offers to purchase a majority or all the shares of the capital stock of the Wiggins Ferry Company, a corporation existing under the laws of Illinois, and agrees to pay therefor on the delivery of the certificates for so many of said shares, not less than a majority, as shall be deposited with said trust company on or before May 5th, 1902, properly endorsed in blank for assignment and transfer on the books of said Ferry Company, the sum of five hundred dollars per share.

The trust company acting in the capacity as agent of other parties is to receive from such other parties for its services a commission of two and one-half per cent upon the purchase-price of five hundred dollars per share in addition to said purchase-price. The Mercantile Trust Company will not be obliged to accept any stock unless the owners of a majority of shares have agreed to sell the same to said Mercantile Trust Company, agent, on or before May 5th, 1902.

" 'MERCANTILE TRUST COMPANY,

" 'By FESTUS J. WADE, President.'

"That in connection with said offer to purchase there was prepared and attached to said offer as a part of the proposed contract an acceptance to be signed by the stockholders of said Wiggins Ferry Company, in words and figures as follows, to-wit:

" 'The undersigned stockholders of the Wiggins Ferry Company, do hereby accept the foregoing proposition and sell to the Mercantile Trust Company on the terms therein stated, the number of shares of the capital stock of the Wiggins Ferry Company set opposite to our respective names.'

"Plaintiff says that, relying on the terms of said offer and acceptance, and that it was the intention of said trust company to purchase not less than a majority of said stock at and for the price of five hundred dollars a share, and no more, and that if said trust company did not obtain such majority of stock on or before the 5th day of May, 1902, at the said price of five hundred dollars a share, that his said stock would be returned to him, plaintiff signed said acceptance and delivered his stock, or the certificates representing the same, to said trust company, and received a receipt therefor, being a receipt for certificates for one hundred shares of the capital stock of the Wiggins Ferry Company assigned in blank, said shares being deposited with the Mercantile Trust Company under and in pursuance of said proposition made by said trust com-

pany as agent for other parties and the acceptance thereof signed by said L. E. Newman, trustee of Socrates Newman's estate, dated April 24th, 1902, for the purchase of said shares.

"Plaintiff states that afterwards, to-wit, on April 28, 1902, and before the time on which said contract could have become binding on plaintiff, all said defendants having so combined to deceive and defraud plaintiff, did further misrepresent the facts as to purchase of stock under said contract and to illegally retain the same and withhold the same from plaintiff, the said Mercantile Trust Company sent plaintiff by mail a letter enclosing to him its treasurer's check for the sum of fifty thousand dollars in payment, as stated in said letter, for one hundred shares of stock in the Wiggins Ferry Company, sold in accordance with the terms of the proposition made by said company and accepted by plaintiff, thereby representing that the terms and conditions of said proposal and acceptance had been fully complied with by said Mercantile Trust Company, and that a majority of the stock of the Wiggins Ferry Company had been acquired from the stockholders at the price named therein.

"Plaintiff states that he notified said Mercantile Trust Company that he accepted said check only on condition that said trust company had fully carried out said contract on its part and had obtained the majority of said stock at and for the price of five hundred dollars a share, and that plaintiff waived no rights which he might have in the matter.

"Plaintiff states that said Mercantile Trust Company has at no time purchased, secured and had a majority of said stock for itself, or for any principal represented by it, that is, over five thousand shares thereof; that in order to obtain what shares it did have on the said 5th day of May, 1902, said Mercantile Trust Company paid to other stockholders much more than

Vol 189 mo—28

five hundred dollars a share, and the purchaser has not kept and performed the offer and contract on its part, and that on the 5th day of May, 1902, said purchaser did not have a majority of said stock, and did not purchase what he did have at five hundred dollars a share, and thereby this plaintiff was released from said agreement and said purchasers were bound to return said stock of this plaintiff to him. That on said 5th day of May plaintiff learning of the failure of said purchasers to so keep said contract, and that the same had been so violated by them, he did then and there tender back to said trust company and said purchasers, in good and sufficient form, the full sum of fifty thousand dollars, which was the sum so sent plaintiff by check as aforesaid; that the said Mercantile Trust Company, by said Wade as president, acknowledged the sufficiency of said tender as to amount and form, and plaintiff then and thereupon demanded the return to him of his certificates of stock, but said Wade as president as aforesaid, in conjunction with his attorney then present, refused to accept the said tender or return to plaintiff his said stock certificates, said Wade declaring that he had turned them over to the said defendant, the Chicago, Rock Island & Pacific Railway Company, which was, as said Wade declared and as plaintiff avers, the party represented by said Mercantile Trust Company in said transactions.

"Plaintiff states that said defendants, in the manner aforesaid, unlawfully converted said stock to their own use; that the same was then and there of the value of fifteen hundred dollars per share and of the value of one hundred and fifty thousand dollars; that by said unlawful conduct and conversion of said stock by defendants, plaintiff has been damaged in the sum of one hundred and fifty thousand dollars which is due plaintiff and unpaid, for which plaintiff asks judgment of defendants with interest and costs."

The second count is in the form of a common law

action of trover for the conversion specifically set out in the first count.

The answer of the defendants is as follows:

"Now come the defendants in the above entitled cause, and for answer to the first count of plaintiff's petition herein admit that defendant the Mercantile Trust Company was at the time stated and is a corporation organized under the laws of Missouri, providing for the incorporation of trust companies; admit that the Chicago, Rock Island and Pacific Railway Company was and is a railroad corporation incorporated under the laws of Illinois; admit that plaintiff was and is the trustee under the last will and testament of Socrates Newman, deceased.

"Defendants further admit that plaintiff owned and held, as said trustee, one hundred shares of the capital stock of the Wiggins Ferry Company, and that plaintiff on or about April 25, 1902, for a consideration of five hundred dollars per share, amounting to fifty thousand dollars, in cash, paid to him by the Mercantile Trust Company, sold and delivered his one hundred shares of stock of the Wiggins Ferry Company to said Mercantile Trust Company, acting for and on behalf of defendant, the Chicago, Rock Island and Pacific Railway Company.

"And defendants deny each and every other allegation contained in the first count of plaintiff's petition.

"And for answer to the second count of plaintiff's petition defendants deny each and every allegation therein contained."

In support of his action the plaintiff introduced the following evidence:

The plaintiff testified as follows:

"That he was forty-one years old, son of Socrates Newman and trustee under his will. April 24th, 1902, held 100 shares of stock of the Wiggins Ferry Com-

pany as such trustee. John Scullin was president of the Wiggins Company.

"There was an agreement for a voting trust existing between the stockholders of the Wiggins Company at that time. Received dividends on stock—the stock was held in two lots, thirty shares outside voting trust, seventy shares in that trust. On the 25th of April, 1902, received a letter from John Scullin, president Wiggins Company—identifies letter—knows Scullin's signature—letter admitted and marked Exhibit No. 1 on Wiggins Ferry letter head and is as follows:

" 'St. Louis, April 24, 1902.
" 'Dr. L. E. Newman, City.
" 'Dear sir:

" 'I have a matter pertaining to this company which requires the immediate action of its stockholders, and deem it to be of the utmost importance that you should call at my office at once. Please regard this as strictly confidential.

" 'Yours respectfully,
" 'JOHN SCULLIN, President.'

"After receiving the letter he went to Wiggins office, met Mr. Wade, who stated that Scullin had left him to look after affairs; that Scullin had gone to a meeting and had left him to take charge of things. He then stated to me that the Mercantile Trust Company had an offer to buy a majority or all of the stock of the Wiggins Ferry Company at $500 a share. He then handed me a paper, which I read—signatures to which I looked over and without very much ado I signed the paper.

"Identifies that paper—knows signature of Festus J. Wade thereto, president of the Mercantile Trust Company. I signed it 'Socrates Newman Estate, L. E. Newman, Trustee,' '100' opposite indicating 100 shares. The paper was admitted in evidence as Exhibit No. 2, and read as follows:

" 'St. Louis, April 24, 1902.

" 'The Mercantile Trust Company, acting herein for other parties, offers to purchase a majority or all of the shares of the capital stock of the Wiggins Ferry Company, a corporation existing under the laws of Illinois, and agrees to pay therefor on the delivery of the certificates for so many of said shares, not less than a majority, as shall be deposited with said trust company on or before May 5, 1902, properly endorsed in blank for assignment and transfer on the books of said Ferry Company, the sum of five hundred dollars per share. The trust company acting in the capacity as agent of other parties, is to receive from such other parties for its services a commission of two and one-half per cent upon the purchase-price of five hundred dollars per share, in addition to said purchase price. The Mercantile Trust Company will not be obliged to accept any stock unless the owners of a majority of shares have agreed to sell the same to said Mercantile Trust Company, agent, on or before May 5, 1902.

" 'MERCANTILE TRUST COMPANY,
" 'By FESTUS J. WADE, President.

" 'The undersigned stockholders of the Wiggins Ferry Company do hereby accept the foregoing proposition and sell to the Mercantile Trust Company on and subject to the terms therein stated, the number of shares of the capital stock of the Wiggins Ferry Company set opposite our respective names.

" 'Names.  No. of shares.

" 'John Scullin, and others, 2296 shares.

" 'Festus J. Wade, 20 shares.

" 'Socrates Newman Estate, L. E. Newman, Trustee, 100 shares.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

" 'Louis Nidelet, by Ernest Peugnet, Atty., 82 shares.

" 'Marie O. Puegnet, 82 shares.

" 'Marie O. Puegnet, by Ernest Peugnet, Atty., 82 shares.' "

. . . . .. . . . . . .

Witness continues: "Did not sign that day—signed Friday (April 25th), about 4:30. Delivered the stock Saturday (April 26th) to Mercantile Trust Company about noon—it was endorsed in blank so it could be transferred on the books of the company. Received a receipt from Mr. Wilson, treasurer of the Mercantile Trust Company—identifies receipt—knows the signature of Mr. Wilson, treasurer of the trust company—receipt dated April 26, 1902—marked Exhibit No. 3, reads as follows:

" 'Received, St. Louis, April 26, 1902, from L. E. Newman, Trustee Soc. Newman estate, certificate Nos. 130-129-932 for one hundred shares of the capital stock of the Wiggins Ferry Company, assigned in blank, said shares being deposited with the Mercantile Trust Company under and in pursuance of a proposition made by said trust company, as agent for other parties, and the acceptance thereof, signed by the said L. E. Newman, Trustee Soc. Newman Est., dated April 24, 1902, for the purchase of said shares. The said trust company is either to pay for such shares of stock at the rate of five hundred dollars per share net, or to redeliver said certificate to said L. E. Newman, Trustee Soc. Newman Est. on or before May 5, 1902.

" 'MERCANTILE TRUST COMPANY,

" 'By GEO. W. WILSON, Treasurer.' "

Witness continues: "April 29th received a communication from Mercantile Trust Company—identifies paper and Mr. Wade's signature. The paper reads as follows:

" 'Mercantile Trust Company,
        " 'St. Louis, April 28, 1902.
" 'Mr. L. E. Newman, Trustee Soc. Newman Estate,
        " '3024 Locust St., City.
" 'Dear Sir:
        " 'Enclosed please find our treasurer's check for
the sum of fifty thousand dollars in payment for your
one hundred shares of stock in the Wiggins Ferry Com-
pany sold by you in accordance with the terms of the
proposition made by this company and accepted by you.
Kindly acknowledge receipt of the same, and oblige.
                " 'Yours very truly,
                " 'FESTUS J. WADE, President.' "

Witness continues: "I went to see Mr. Wade after
I received that check, either the day I received it or the
next day.  I said to Mr. Wade in substance: 'Are you
very busy?' and he said, 'Yes, I am always busy,' and
I said, 'I would like to see you about a matter of im-
portance.'  'Well,' he said, 'If it is about Wiggins, I
can talk to you.'  'Well,' I said, 'I received a check for
$50,000 from your company and I want to say to you
that I acknowledge the receipt of that check upon the
assumption that you have fulfilled, or are fulfilling the
terms of your agreement, namely, that you have paid
only $500 a share, and that you have a majority of the
stock.'  I said, 'If you are not fulfilling your contract,
or if you have not fulfilled your contract, I expect to
hold you for the difference between $500 a share and
the higher sums which I can prove you have paid.'  He
said, 'I hear you.'  'Well,' I said 'if you hear me, that
is about all I have to say.'  'Well,' he said, 'I have
got your stock anyhow,' and I said, 'Very well.  Good
day.'  I then went to my office and made a short memo-
randum of the conversation and indited a letter to the
Mercantile Trust Company, practically embodying my
verbal statement to Mr. Wade.

"Witness then identified a copy of the letter, say-

ing it is an exact copy made before the letter was mailed, by himself in his own handwriting. Wrote two letters, duplicated, and this is a copy. I sent the original of that copy by mail, addressed to Festus J. Wade, president of the Mercantile Trust Company, or to the Mercantile Trust Company, I don't know which, but think it was Festus J. Wade, president of the Mercantile Trust Company. It was stamped with a two-cent stamp and deposited in the Government mail box. The letter was dated April 30, 1902, written on L. E. Newman's letter head, marked Exhibit No. 5, and is as follows:

" 'St. Louis, April 30, 1902.
" 'Festus J. Wade, Esq.,
" 'President Mercantile Trust Co., City.
" 'Dear sir:
" 'Allow me to acknowledge herewith receipt of your treasurer's check for the sum of fifty thousand dollars on account of sale of one hundred shares of Wiggins Ferry Company's stock, according to agreement of April 24, 1902, and I accept it only on condition that you have kept and will keep said agreement in all respects, and I desire to formally notify you that I waive no rights which I may have in the matter.
" 'Yours truly,
" 'L. E. NEWMAN,
" 'Trustee, Est. Soc. Newman.' "

Witness resumes: "Nothing further was done between the date of that letter and May 5, 1902, when accompanied by my attorney, General Noble, I went to the Mercantile Trust Company. Festus J. Wade, James L. Blair, John W. Noble and myself were present. General Noble said, that he came there for the purpose of asking back, for his client, Dr. Newman, the Wiggins Ferry Stock, and he said he wanted to make a tender of the money to Mr. Wade and demanded his stock. Wade looked at the cashier's check which Gen-

eral Noble handed him and said he would not be as mean as some people, but that he would consider that a formal and proper tender, but he said, 'I will not return the stock.' It was a cashier's check of the American Exchange Bank for $50,000. Gen. Noble said to Mr. Wade, 'As the 5th of May ran until midnight and it was then noon, he wanted to know whether he would consider it was necessary to come back the next day, when the option had expired, and Mr. Wade said, 'Gen. Noble, you can come to-morrow, and you can come the next day, and I shall always give you the same answer.' Gen. Noble said, 'Will it be necessary for me to return,' and he said, 'No, Gen. Noble, it will not be necessary for you to return. My answer will be the same.' Gen. Noble asked if it was acknowledged by Mr. Wade that the Rock Island was the principal in the purchase of the Wiggins Ferry Company, and Mr. Wade and Mr. Blair, if I remember rightly, stated it was. Mr. Blair said he was representing Mr. Wade. Gen. Noble asked Mr. Blair as to whom the Mercantile Trust Company, Mr. Wade, and himself were representing, and he said, they were representing the Rock Island Railway Company. Gen. Noble stated to Mr. Wade, 'Mr. Wade, do you deny that you are or have paid more than $500 a share for the stock?' and Mr. Wade said, 'No, I do not deny that we have paid more. It will have to go into court anyhow.' He did not state how much more than $500 he had paid. Nothing was said as to whether Mr. Wade had paid any more than $500 a share to those who had signed the proposal. It was just a general statement that he had paid it.''

On cross-examination witness said: "Wade refused to take the cashier's check tendered him, and I still have the $50,000 in my possession. Defendant's counsel admitted that the stock was purchased for the Rock Island Railway Company.''

''Dr. L. E. Newman was recalled and questioned by the court, and stated that after he had his interview

with Mr. Wade, he deposited the check—he did not collect the money—he deposited it and waited until the time for the option to expire, it went through the clearing house and was collected in the regular course and went to my credit as trustee.''

The plaintiff was then permitted to introduce the following written agreement in evidence over the objection of the defendants:

''An agreement made and entered into this 22d day of April, A. D., 1902, by and between the Chicago, Rock Island and Pacific Railway Company (hereinafter called the Rock Island Company) and the Mercantile Trust Company of the city of St. Louis, Missouri (hereinafter called the Trust Company), witnesseth:

''The Trust Company for a valuable consideration, hereby undertakes as agent to buy for the Rock Island Company a majority of all of the shares of the capital stock of the Wiggins Ferry Company, an Illinois corporation, on the terms and subject to the conditions following:

''Said shares shall be purchased at the price of five hundred dollars per share, it being understood that the entire capital stock of said Wiggins Ferry Company consists of ten thousand shares of the par value of one hundred dollars each. Payment for said shares shall be made in cash on the surrender of the certificates for so many of said shares (not less than a majortiy) as shall be deposited with the Trust Company on or before May 5, 1902, properly endorsed in blank for assignment and transfer on the books of the company. The Rock Island Company will provide funds for such payment on said May 5, 1902, on demand of the Trust Company. It being understood, however, that no such payment shall be made by the Rock Island Company, nor shall said company be liable to purchase or take any of said shares unless certificates for at least a majority of the entire capital stock of said Wiggins Ferry Company shall then be on deposit with said

Trust Company ready for delivery as aforesaid. The Rock Island Company agrees to pay the Trust Company at the time of payment for said shares so purchased, and the delivery of the certificates therefor, a commission of two and one-half per cent on the total purchase then paid therefor.

"THE CHICAGO, ROCK ISLAND & PACIFIC RAILROAD CO.,

"By W. B. LEEDS, President.

"MERCANTILE TRUST COMPANY,

"By FESTUS J. WADE, President."

The plaintiff then introduced Gen. Noble, who testified as a witness in his behalf and whose evidence corroborated that of the plaintiff as to the tender and demand for a return of the stock on the 5th of May, 1902. After which, plaintiff offered in evidence the depositions of Daniel G. Reed, William H. Moore and Robert Mather, which, after a colloquy between the court and counsel, were rejected.

Besides these depositions, some other depositions of like character and other evidence was offered and rejected, which in the view we take of this case need not be particularly noticed; after which the plaintiff was permitted to introduce in evidence the charters of the Wiggins Ferry Company and the defendant Railway Company.

At the close of the plaintiff's evidence the court instructed the jury that under the pleadings and evidence in the case the plaintiff is not entitled to recover and their verdict should be for the defendant on both counts of the petition. Thereupon the plaintiff took a nonsuit with leave; and, thereafter, filed his motion in due time to set the same aside, which having been overruled, he appealed.

1. The first contention of counsel for plaintiff is that "Under the pleadings all the evidence offered by the plaintiff and rejected by the court below was admissible and that the court erred in its rulings thereon.

The petition was broad enough to let in all the facts tending to prove fraud at any step of the transaction and enable the jury to pass upon the whole case.''

It is well-settled law in this State that ''a mere charge of fraud, without specification of the act or acts which constitute the alleged fraud, amounts to nothing in pleading.'' [Nagel v. Railroad, 167 Mo. 89, and cases cited.]

In the first count of the petition the only acts specified as fraudulent are the presentation to the plaintiff of the contract of April 24, 1902, and the sending to him by mail of the letter enclosing the check for fifty thousand dollars in payment for his stock, upon the representations contained in which it is alleged that he relied. These instruments speak for themselves, and of them no fraud is predicable. But, it seems to be contended that under the second count in the petition the rejected evidence was admissible, the broad claim being that under that count ''any facts tending to prove fraud at any step in the transaction'' are admissible. It is sufficient to say, in answer to this contention, that after a careful perusal and consideration of all the rejected evidence, we fail to find therein any evidence tending to prove the perpetration, or even the contemplation, of any fraud on the plaintiff, or, for that matter, upon any person. All this evidence tended to prove that could in any way affect the plaintiff was, that the defendant Railway Company, being desirous of obtaining a majority of the stock of the Ferry Company, undertook to accomplish that purpose by the means set out in the written instruments contained in the foregoing statement, and that after the offer of five hundred dollars per share by the Trust Company became noised abroad, the price of the stock suddenly rose, and that the Trust Company before the 5th of May did, in fact, purchase some of the stock at such advanced price. The fact that such advanced price was so paid by the Trust Company was proven, and, as a conceded fact, will be

treated for all it is worth in considering the real issues
in the case, but that fact was, and could be no fraud
upon the plaintiff. There is in fact no question of fraud
in the case. The only real questions in the case arise
upon the written instruments set out in the statement,
and the acts of the parties thereunder. The court com-
mitted no error in the rejection of offered evidence, and
we will now proceed to the consideration of the real
questions in the case. -

2. The plaintiff's action is essentially one of
trover. Such an action may be maintained for shares
of stock in a corporation. Stock certificates and shares
of stock may be treated as synonymous as they were
evidently so regarded by the parties in this transac-
tion. In order to maintain his action the plaintiff must
have been the owner of the shares of stock in contro-
versy and entitled to their possession at the time of the
alleged conversion. It is conceded that on the 5th of
May, 1902, he tendered to the Trust Company the sum
of fifty thousand dollars and demanded the stock and
that his demand was refused. Demand and refusal are
evidence of conversion. Hence, if on that day he was
the owner of the stock and entitled to the possession
thereof, his case is made out; otherwise, not. Prior to
April 24, 1902, the plaintiff was the owner and in pos-
session of the stock. On that day he entered into the
agreement of that date with the Trust Company, in pur-
suance of which on the 26th day of April, 1902, the stock
was delivered to the Trust Company and the plaintiff
accepted the receipt therefor, of that date. By this
means the title to the stock and the possession thereof
became separated. The title remained in the plaintiff
and the possession in the Trust Company, each hold-
ing subject to the contract. Now, the crucial question
is, "What was that contract?" It was in writing and
is evidenced by the proposition of the Trust Company,
the acceptance of that proposition by the plaintiff

and the receipt for the stock, set out in the statement. The proposition of the Trust Company of April 24, 1902, was, in substance, to pay the sum of five hundred dollars per share for all, or a majority of the shares of the capital stock of the Wiggins Ferry Company that should be deposited with the said Trust Company in the manner therein stated, on or before May 5, 1902; the acceptance of the stock, however, not to be obligatory on the Trust Company unless the owners of a majority of the shares agreed to sell the same to the company. This proposition was, on the next day, accepted by the plaintiff, and in pursuance thereof the plaintiff's stock was delivered to the Trust Company, on the 26th of April, 1902, and the receipt of the company, of that date, accepted by him, in which the general terms of the contract were applied specifically to this one hundred shares of stock, for which the Trust Company was, on or before May 5, 1902, to pay him the sum of five hundred dollars per share or return the stock to him as therein stated. To consummate the sale and pass the title of the stock to the Trust Company, in whose possession it then was, nothing remained to be done except for the Trust Company to accept the stock and pay the plaintiff five hundred dollars per share therefor. The acceptance of the stock was obligatory upon the Trust Company if a majority of the stockholders, on or before May 5, 1902, agreed to sell their stock in like manner; otherwise the acceptance was optional with the Trust Company until that date. This is the plain and obvious meaning of the contract. The Trust Company exercised its option by accepting the stock and paying the plaintiff the purchase-price therefor on the 28th of April, 1902, in the manner set out in the statement. When this was done the sale was complete and the title of the stock passed to the Trust Company, in whose possession it then was, and, on the 5th of May thereafter, when the conversion is alleged to have taken place, the title to the stock, as well as its possession

being in the defendant Trust Company, and the plaintiff having neither title thereto nor right to the possession thereof, the court committed no error in its peremptory instruction that plaintiff could not recover.

3. But, it is further contended that the title did not so pass to the Trust Company because the defendant Railway Company, for whom the Trust Company purchased the stock, was a foreign corporation, not having license to do business in this State, and the making of such a contract by it was not within its corporate powers. A sufficient answer to this contention is, that the contract was not made with the Railway Company. The parties for whom the purchase was being made were not disclosed and it was not made upon the faith or credit of any such parties. It was, in form and in fact, a personal contract between the plaintiff and the Trust Company, a responsible party entirely competent to make the contract and to charge itself with all the liabilities thereof, and who did so charge itself and upon whose responsibility the plaintiff entirely relied. There is nothing in this contention. The judgment of the circuit court is affirmed.

All concur, except *Marshall, J.*, not sitting.