CARRIE V. C. WANN, Appellant, v. JOHN SCULLIN, FESTUS J. WADE and MERCANTILE TRUST COMPANY.

Division Two, July 1, 1911.

1.   **PRINCIPAL AND AGENT: Fraud and Deceit: Ratification of Agent's Unwarranted Act.** A principal cannot accept the fruits of an unauthorized bargain made by his agent, and then sue the agent for exceeding his authority in making the bargain. By ratifying the contract the principal ratifies and endorses the agent's unauthorized act and absolves the agent from any liability on account of his exceeding his authority.  So that where the agent was authorized to sell plaintiff's stock in a ferry company to a trust company for $500 per share upon condition that the agent sold and the trust company acquired a majority of the ferry stock at that price, and plaintiff, with knowledge that the company had not acquired a majority of the stock, and with knowledge that the trust company was paying much more than $500 per share in order to obtain a majority of the ferry stock, accepted a check from the trust company, through her agent's hands, for her stock at the rate of $500 per share, and retains that check, she will be held, in her action for fraud and deceit against the trust company and her agent, to have ratified the action of her agent, and to have absolved him from all liability to her.

2. ———: ———: ———: **False Telegram from Agent.** Where the agent, after he had contracted the sale of plaintiff's stock in a ferry company to a trust company at $500 per share and had under that contract delivered the stock, sent a telegram to plaintiff that the trust company had a majority of all the stock, which was not true, and did not inform her that the stock had two days previously begun to rise in selling value and had at that time reached $1500 per share, yet if the next day, when she went to the trust company and demanded the stock, she knew that it did not have a majority of the ferry stock and that its selling value had reached $1500 per share, and with full knowledge of these facts she retained the check which the company had sent her in payment for her stock at $500 per share and sued for fraud and deceit, she was not misled to her injury by the telegram or by her agent's failure to inform her of its rise in selling value, but ratified the sale, and cannot recover from either her agent or the trust company.

3. ———: ———: **Concealment: Opinion as to Different Conduct.** Where a railroad company was endeavoring to purchase a majority of the stock of a ferry company, through a trust company, and plaintiff's agent was a stockholder in all three companies, and concealed from her the fact that the railroad company was the probable purchaser from the trust company of the stock and that the trust company was to receive a commission for making the purchase of her ferry company stock, her testimony that the concealment of these facts from her by her agent constituted a material inducement to send her stock to her agent for sale and that she would not have sent it to him had she known them, is a matter of opinion as to what she would have done had she known the facts, and the court cannot accept them as being an inducing cause for her agreement to sell, in the absence of evidence of some material fact which would have constituted a reason for her to act otherwise, and in view of the fact that she then thought she was getting a high price for her stock, and there had been no rise in its selling price.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams*, Judge.

AFFIRMED.

*John A. Gilliam* and *Luther Ely Smith* for appellant.

(1) Upon receipt of plaintiff's certificate of shares of stock by defendant Scullin in response to the

telegram of April 24, 1902, to her, it became his duty
to exercise judgment, discretion, vigilance and zeal in
her behalf. He was bound to see that the terms of the
offer that he transmitted to her, and under which she
sent her stock to him, were complied with before he
surrendered her stock. (2) Defendant Scullin was a
stockholder to the extent of $1,750,000 in the pur-
chasing company at the time he sent the telegram of
April 24, 1902, and received her stock in response
thereto, and turned same over to the immediate agent
of the purchasing company; and he was also a large
stockholder in the Mercantile Trust Company, the
immediate agent for the purchaser of this stock. Such
interest on the part of defendant Scullin in the purchaser
constituted an interest in the subject-matter adverse to
plaintiff, and she knew nothing of it then or until long
afterwards; it constituted in law, therefore, a fraud upon
plaintiff. (3) Plaintiff upon discovery of that adverse
interest is not restricted to the remedy of rescission.
She is entitled, in law, to bring suit against defendant
Scullin for the difference between the price which he
could have obtained and that which he did obtain. Nor
is she compelled, in order to establish her damages, to
buy other shares, and sue for the difference. She may
retain what she did obtain and sue for the difference
between that figure and the price which he should have
obtained but failed to obtain. Mulvane v. O'Brien, 58
Kan. 463; Bank v. Simon, 133 Mass. 415. (4) The
fact that another purchaser came into the field and the
further development that the situation changed rapidly,
far from being any excuse to defendant Scullin as
plaintiff's agent, is all the more reason why he should
be held to the full terms of the telegram of April 24,
1902. Had defendant Scullin retained plaintiff's stock
in order to make certain, before turning over plaintiff's
stock, that a majority had agreed to sell to his undis-
closed purchaser at $500 a share, he would have had
her stock a sufficient length of time to have informed

plaintiff of the new offer and the higher prices, and to have enabled him to have obtained the highest price possible for plaintiff. His failure to exercise the discretion, zeal, vigilance and loyalty towards plaintiff with reference to her stock, under the conditions which he did know, made it impossible for him to serve plaintiff loyally under the conditions which unexpectedly arose. His zeal, vigilance and haste with reference to plaintiff's stock were all manifested in behalf of the purchaser; he signed an option agreement without plaintiff's authority, knowledge or consent; he turned over her stock immediately upon its receipt. Had he been absolutely free and independent of any connection with the purchaser (Rock Island) or the purchaser's immediate agent (Mercantile Trust Company) he would most naturally and most unquestionably have gone about the matter cautiously and deliberately. He would have endeavored to ascertain first that the majority had agreed to sell at $500 a share. Failing in that endeavor, he would have communicated with plaintiff before turning over her stock. The result of that deliberation and caution would have made it possible for defendant Scullin to have informed plaintiff of the changed conditions and the new offer in ample time for her to have obtained $1,000 or $1,500 per share for her stock, even though defendant Scullin did not, when he sent the telegram of April 24, 1902, anticipate that the offer of $500 a share for a majority or all of the stock ever would be withdrawn or any other offer substituted for it.

*Klein & Hough, Ferriss, Zumbalen & Ferriss,* and *Joseph S. Laurie* for respondents.

(1) The action of the court in sustaining the motion for a new trial on the ground that plaintiff's instruction number two should have been refused, was proper. Said instruction was based upon the theory that Scullin's failure to disclose to plaintiff the fact that he was a stockholder in the Chicago, Rock Island &

Pacific Railway Company, and that the offer to purchase was made by that company, was a fraud upon plaintiff which entitled her to recover against defendant Scullin. And as to the defendants Mercantile Trust Company and Wade, it was based upon the theory that they were liable jointly with Scullin if Wade knew that Scullin was a stockholder in the Rock Island Company and did not communicate the fact of such knowledge to plaintiff. (a) As to the defendant Scullin the instruction is erroneous because the failure to disclose to plaintiff the fact that he was a stockholder in the Rock Island Company and that said Company was the intending purchaser, was not in law a fraud upon the plaintiff, and did not disqualify him from receiving from plaintiff her stock and delivering the same to the Trust Co. under the terms of the telegram of April 24th, and did not entitle her to recover against him. Hardwick v. Jones, 65 Mo. 54; Kitchen v. Railway, 69 Mo. 224; Gaty v. Sack, 19 Mo. App. 470; Van Dusen-Harrington Co. v. Jungeblut, 75 Minn. 299; Alexander v. Williams, 14 Mo. App. 13; Insurance Co. v. School District, 25 C. C. A. 492; Northrup v. Ins. Co., 48 Wis. 420; 1 Thompson on Corporations, sec. 1071; 1 Morawetz on Corporations, sec. 521. (b) The rule requiring the agent to disclose his adverse interest applies only to agents who are intrusted with a discretion in the matter of the agency, and is not applicable where the principal makes his own bargain and the agent is a mere ministerial one, without any discretion. Tiffany on Agency, p. 418; Mechem on Agency, sec. 67; Pollatschek v. Goodwin, 40 N. Y. Supp. 682; Mining Co. v. Fox, 4 Ired. Eq. 61; Spalding v. Mattingly, 89 Ky. 83; Knauss v. Brew. Co., 142 N. Y. 70; Ranney v. Donovan, 78 Mich. 318; Kilbourn v. Sunderland, 130 U. S. 505; Atwood v. Railroad, 85 Va. 966. (c) The instruction is erroneous for the further reason that it does not require the jury to find the essential elements in an action of this kind, that the facts concealed were material and

that plaintiff would not have sent her stock to Scullin had she known that he was a stockholder in the purchasing company. 14 Am. & Eng. Ency. Law (2 Ed.), p. 113; Wannell v. Kerm, 57 Mo. 478; Bailey v. Smook, 61 Mo. 213; Dunn v. White, 63 Mo. 181; Powell v. Adams, 98 Mo. 598; Feller v. McKillip, 100 Mo. App. 664; Tinker v. Kier, 195 Mo. 183; 20 Cyc. 23 and 40; Jordan v. Pickett, 78 Ala. 331.    (2)    The motion for a new trial was properly sustained, because the trial court erroneously refused to give the instructions asked in behalf of each of the defendants at the close of the plaintiff's case.    These instructions should have been given as to all three defendants, because:    (a)    There was no evidence of any fraud having been perpetrated by either of the defendants nor of any fraudulent motive or intent on their part; hence there was no evidence which would authorize a recovery under the pleadings as against either of the defendants.    20 Cyc. 35; Koontz v. Kaufman, 31 Mo. App. 397; Florida v. Morrison, 44 Mo. App. 538; Tootle v. Lysaght, 65 Mo. App. 139; Culver v. Smith, 82 Mo. App. 390; Lovelace v. Suter, 93 Mo. App. 429; Bank v. Trust Co., 179 Mo. 662; Nations v. Pulse, 175 Mo. 86, 94; Boulder v. Stilwell, 100 Md. 543.    (b)    The plaintiff's evidence disclosed the fact that there had been an accord and satisfaction between plaintiff and defendants as to the subject matter of this suit.    McCormack v. St. Louis, 166 Mo. 335; Coal Co. v. St. Louis, 145 Mo. 651; McCregor v. Ware Co., 188 Mo. 611; St. Joseph v. Hull, 72 Mo. App. 403; Andrews v. Stubbs Co., 100 Mo. App. 599; Perkins v. Hedley, 49 Mo. App. 556; Cornelius v. Rosen, 111 Mo. App. 619; Lightfoot v. Hurd, 113 Mo. App. 612; Rogers v. Pub. Co., 118 Mo. App. 1; Railroad v. Clark, 178 U. S. 353; U. S. B. & S. Co., v. Thistell, 69 C. C. A. 651; Nassoily v. Tomlinson, 148 N. Y. 326; Jackson v. Volkening, 80 N. Y. Supp. 1102; Goss v. Rishel, 85 N. Y. Supp. 1045; Paper Co. v. Tonawanda Co., 94 N. Y. Supp. 946; Gas Co. v. Johnson, 123 Pa. St. 576;

Keck v. Hotel Co., 89 Iowa, 202; Truax v. Miller, 48 Minn. 62; Creighton v. Gregory, 142 Cal. 34; Leather Co. v. Foyer, 104 Ill. App. 268; Coal Co. v. Parlin, 215 Ill. 244; Richardson v. Taylor, 100 Me. 175.

ROY, C.—This cause was begun in the circuit court of the city of St. Louis, May 15, 1902. There was a trial at the March term, 1904, on the second amended petition, resulting in a verdict for plaintiff for $50,000.

Defendant's motion for a new trial was sustained and plaintiff appealed. The action of the trial court in granting a new trial was sustained by this court in an opinion reported in 210 Mo. 429.

The case was retried on June 2nd and 3d, 1909. The trial court sustained a demurrer to the evidence and entered its verdict for defendants, and the plaintiff, after her motion for new trial was overruled, perfected her appeal to this court.

It would be vain to try to improve upon the exhaustive statement of the facts in the case made by GANTT, J., and his statement will be used as the basis of the statement for the present purposes, and only such additions will be made thereto as are required to show the difference in the facts as developed at the last trial.

On May 27, 1908, a third amended petition was filed. This petition differs from that on the former trial in three points: first, it omits a number of allegations as to conspiracy and confidential relations which were in the second amended petition, and which counsel do not consider important; second, it alleges that had plaintiff known of Scullin's interest in the Rock Island Company or the Mercantile Trust Company, and the agency of the latter for the Rock Island Company, she would not have sent her stock to Scullin; third, it states the legal effect of the telegram of April 24, 1902, from Scullin to plaintiff, and of the telegram of April 25, 1902,

from her to him,. according to their legal effect as the pleader interpreted them, instead of setting them out *in haec verba* as in the former petition.

The last trial occurred before the court sitting as a jury; and, by consent of counsel, all evidence given at the previous trial went in as though then and there adduced by the respective parties with the same objections and exceptions. In other words, the former bill of exceptions was made a part of the record on the last trial to the same extent as if the proceedings therein contained had occurred at the last trial.

The appellant claims that new evidence was introduced at the last trial which should have the effect of changing the result; and it is deemed proper to state the appellant's claims in that respect, and at the same time call attention to the record on the former appeal, so as to understand what if any effect the new evidence should have on the questions involved.

A. Appellant claims that the contract between the Rock Island Company and the Trust Company by which the Trust Company undertook the purchase of the Wiggins Ferry Stock for the Rock Island Company is new evidence. But an examination of the statement on the former appeal (210 Mo. l. c. 454) shows that this court fully considered that contract.

B. Likewise the Mercantile Trust Company's contract of purchase of Wiggins Ferry Company stock made with various stockholders was before this court on the former hearing. [L. c. 454.]

Appellant claims that there was new evidence tending to show that the Mercantile Trust Company failed to acquire a majority of the Wiggins Ferry stock. On the former appeal, the petition alleged such failure, and while the answer contained a denial of all the facts not admitted, it did not allege that the Trust Company obtained a majority of the stock and plaintiff testified (210 Mo. l. c. 458) that she knew that the Trust Company did not have a majority of the stock,

and that everybody was talking about it. It will thus be seen that while there may be more evidence on that point in the present record than on the former trial, yet the question now, as then, is not as to the amount of evidence on that point, but whether any amount of evidence on that point affects the cause.

C.   Plaintiff offered in evidence a contract of sale by Joseph G. Holliday to James Campbell at $750 per share of 25 shares, theretofore signed by Holliday at $500 per share, the sale being upon indemnity against claim of Mercantile Trust Company and expressly concurred in by Mercantile Trust Company.   The contract was excluded by the Court and plaintiff excepted.

D.   Plaintiff offered to prove by H. W. Cox the value of the real estate and improvements of the Wiggins Ferry Company in St. Louis and East St. Louis in April, 1902, to be $7,185,316, which was excluded, and exceptions taken.

E.   The like offer was made as to the real estate in St. Louis, by C. C. Crone, and was excluded, and exceptions taken.

F.   Plaintiff offered to prove by Alonzo C. Church that the net earnings of the Wiggins Ferry Company for five years preceding April 24, 1902, were approximately each year $253,000 and over, which was excluded and exceptions taken, and Church testified that Scullin told him on April 24, 1902, that, while he could not tell him the name of the proposed purchaser of Wiggins Ferry Company, the effect of the sale to the purchaser would be to revolutionize the traffic across the river at St. Louis, and that it was a large system, a large railroad system.

G.   Breckenridge Jones testified that he bought Wiggins Ferry Company stock for some of the railroads which were a part of the proprietary lines of the Terminal Association, beginning April 26, 1902, and up to May 12, 1902, in all eight different purchases; amount-

ing to 332 1-2 shares at from $1000 to $1500 per share, and that the Mississippi Valley Trust Company bought approximately 5800 shares, which was more than a majority.

H.   Mrs. Wann testified that when she sent her stock to Scullin, she did not know that the Rock Island Company was the prospective purchaser, and did not know what had taken place between Scullin and the Rock Island Company, and that she would not have sent the stock if she had known that Scullin had an agreement with the Rock Island to secure a majority or all of the stock for that company at $500 per share, or if she had known that he was interested in these other affairs, and she testified that the absence of an agreement on the part of Scullin with the Rock Island was a material inducement to her to send her stock to him, and that if she had known of such an agreement, she would not have sent the stock to Scullin.

The plaintiff makes three distinct charges against defendant Scullin, which will be taken up and discussed, not in their chronological order, but in the order most conducive to a clear and easy understanding of the case.

I.   The following charge is made in the petition: That on April 29, 1902, plaintiff "received by mail from the Mercantile Trust Company a check for twenty-five thousand dollars, and from said Scullin a telegram drawn by said Wade which pledged the honor of himself, the Mercantile Trust Company and its president Wade that they then had a majority of all of the stock of the Wiggins Ferry Company contracted for. And plaintiff states that said allegation in said telegram was not true, and was made with intent to deceive and defraud plaintiff."

But by reference to the court's statement of the case when it was first here, it will be seen on pages 446 and 447 that plaintiff made the statement in her peti-

tion that on April 29th she received at Chicago from the Mercantile Trust Company its check for $25,000 sent by that company as payment. for the stock, and that on April 31st she went to defendants .Wade and the Mercantile Trust Company with said check and informed said company and said Wade that she was. dissatisfied with said sale, when said Wade informed her that he had plaintiff's stock and intended to keep it,. and that plaintiff saw Scullin, who said he would see what could be done about it, but on the next day said he had no time to talk about it; and said petition continues in the following words: "And plaintiff, finding that the Mercantile Trust Company was determined to keep her stock and that Wade and Scullin refused to talk to her about the alleged sale, returned with said check to Chicago, Illinois, and plaintiff has retained the said check and elected to sue the defendants for their fraud and deceit."

And plaintiff's testimony on the. former trial (210 Mo. 459) shows that she knew while in St. Louis and while she still had said check in her possession that the Mercantile Trust Company did not have a majority of said stock and were paying others bigger prices, so. that if it be true that the failure of the Mercantile Trust Company to acquire a majority of the stock put it out of the power of .Scullin under his agency to. deliver plaintiff's stock, the plaintiff, with full knowledge, ratified the contract by retaining and cashing the check.

The law does not permit a principal to accept the fruits of a bargain made by the agent, and then sue the agent for exceeding his authority in making said bargain. By ratifying the contract the principal ratifies and indorses the agent's act in exceeding his authority and absolves the agent from any liability on account of such excess.

Mechem in his work on Agency, section 171, says: "The general rule therefore is that by such ratification

the principal absolves the agent from all responsibility for loss or damage growing out of the unauthorized transaction."

It is said in Clark & Skyles on Agency, section 385: "Of course, if an agent departs from the instructions of his principal, the principal may ratify his act, either expressly or impliedly, and thus release him from liability," and the same position is held by Tiffany on Agency, page 87.

In Kirkpatrick v. Pease, 202 Mo. l. c. 490, it is said: "The ratification of an act, done by one assuming to be an agent, relates back, and is equivalent to a prior authority."

In Aetna Ins. Co. v. Sabine, 6 McLean (U. S. C. C.) 393, which was a suit against an agent for exceeding his authority as such, the court says: "If he be not authorized to act, the policy is not binding on the plaintiff, and a ratification of the policy by the company would relieve the defendant from responsibility, and remove from the plaintiff all ground of complaint."

We are aware that this doctrine requires that, in order to discharge the agent by ratification of his act, the principal must be in possession of all the material facts. But in considering this question, we must not confuse the facts on the point of ratification with the facts on the question of deceit. In order to make the ratification binding on her as against the agent, it was only necessary for her to know the facts as to the value of the stock and as to whether the Trust Company had a majority of it. She was, by her own statement, in possession of all those facts, and is bound by her ratification, so that she has no cause of action against Scullin for exceeding his authority.

II. Plaintiff charges defendant Scullin with representing to her in the telegram of April 29th that the Mercantile Trust Company had a majority of all the stock and with failing to inform her of the rise in the value of the stock which began late on April 26th and

reached $1500 per share on Sunday the 27th. That telegram was sent, and the rise in the value of the stock occurred after Scullin had subscribed plaintiff's stock to the Mercantile Trust Company's contract of purchase, and after Scullin had delivered plaintiff's stock to the Trust Company under that contract. Yet before plaintiff took any further action, she went to St. Louis, she found that the Trust Company had her stock and refused to give it up; she found that it was worth $1500 per share; she found that the Trust Company did not have a majority of the stock, and with a full knowledge of all these facts, according to her statement in the former petition, she chose to ratify the sale and sue for fraud and deceit. She was not misled to her injury either by the statement that the Mercantile Trust Company had a majority of the stock or by the failure of Scullin to inform her of the rise in value of the stock.

III.   It is charged that defendant Scullin concealed from plaintiff the fact that he was largely interested in the Rock Island Railway Company and in the Mercantile Trust Company, and concealed from her the fact that the Rock Island Company was the probable purchaser of her stock, and that the Mercantile Trust Company was to receive a commission of two and one-half per cent for making the purchase. The defendant testified that she was ignorant of those facts and that the absence of those facts constituted a material inducement to send her stock to Scullin, and that she would not have sent it to him if she had known those facts. That testimony seems to have been furnished by the plaintiff on account of the following language in the former opinion of this court (l. c. 487):

"In addition to what has already been said, we think this instruction is also fatally defective for the reason that it did not require the jury to find that the failure of Scullin to disclose his ownership of stock in the

235 Sup.—41

Rock Island Company and that said company was the intending purchaser, were material inducements to the plaintiff's action in sending her stock to defendant Scullin in response to his telegram of April 24th, nor that she relied upon the non-existence of such facts and would not have sent her stock had she known the facts."

We take it for granted that the above testimony was given conscientiously and in good faith; but, with due deference, we must say that her opinion as to what she would not have done under circumstances which never occurred is worth no more than the opinion of other persons on that subject. When she says that the failure of Scullin to disclose certain facts to her was a material inducement to her to do what she did, we must decline to yield our judgment to hers on the question as to what she would have done. If plaintiff had furnished evidence of some material fact which would have constituted a reason for the plaintiff to act otherwise than as she did, it might have changed the complexion of the case, but she has not done so. It still remains a fact that the only possible reason that would have caused her to act otherwise than as she did was the rise in the price of the stock, and she could not know of that because that rise did not occur until afterward; and when it did occur was probably almost as much of a surprise to the defendants as to the plaintiff.

There was another proposition in the opinion of this court on page 488, which there has been no attempt to satisfy. It is as follows: "The transactions involved in this case were the same as those which were before this court in the case of Newman v. Mercantile Trust Co., 189 Mo. 423. And this court in that case held, after a careful perusal and consideration of the evidence that was rejected in that case, being practically the same as that in this case, that there was no evidence tending to prove the perpetration or even the contemplation of any fraud on the plaintiff or any other person. On the contrary, the evidence abundantly establishes that

Wann v. Scullin.

the defendants Scullin and Wade not only were not moved by any fraudulent purpose in advising plaintiff to sell her stock for $500 per share, but were actuated by a desire to deal justly and fairly, not only with the plaintiff, but with every stockholder of the Wiggins Ferry Company, in endeavoring to sell said stock to the Rock Island Company."

As was said by BOND, C., in the case of Clubb v. Scullin, *ante*, p. 585, growing out of a similar state of facts, recently decided by this court: "The agency entrusted to defendant was one which carried no power of judgment or discretion in the performance of the acts prescribed. It charged him neither with the duties nor responsibilities of a general agent. An agency confined to the acceptance of a fixed price and the turning over of the property for which it is paid is not one which saddles the agent with the same liabilities towards his principal, which attach, as a matter of law, when one person gives another the power to exercise full judgment and discretion in the sale of property."

As no case has been made against the defendant Scullin, it follows, under all the facts, that none has been shown against the other defendants, and the judgment is affirmed. *Brown, C.*, concurs in result.

PER CURIAM.—The foregoing report of the commissioners is hereby adopted as the opinion of the court.