# SAMUEL C. CLUBB, Appellant, v. JOHN SCULLIN.

### Division Two, July 1, 1911.

1. **SALE OF STOCK: Minor: Power of Curator to Sell.** Where the sole cause of action pleaded in the petition is the alleged failure of defendant, as agent of plaintiff's curatrix, to get the best market price when he made a sale of plaintiff's certificates of stock, the question of whether plaintiff's curatrix, as such, was empowered to transfer the legal title and possession of the stock to the agent and through him to the purchaser is not for consideration.

2. **INVOLUNTARY NONSUIT: Inferences in Plaintiff's Favor: Practice.** In reviewing the action of a trial court in compelling and refusing to set aside a nonsuit taken with leave, every reasonable inference which can be drawn from plaintiff's evidence will be assumed by the appellate court to be true. The reason is that all issues as to either inferences or facts must be tried by the jury; and it is only when the evidence and the reasonable inferences therefrom are undisputed, and when the law applicable thereto precludes any recovery, that a trial court is justified in withdrawing a case from the jury.

3. **SALE OF STOCK: Offer: Acceptance and Direction for Delivery: Bailee's Duty: Restricted Agent: Concealment of Interest.** Defendant, president of a ferry company, telegraphed plaintiff's curatrix on April 24th that he had been offered $500 per share "for a majority or all of the stock" of the company, that he had agreed to sell all his own stock at that price and "strongly recommend you to do likewise," and asked her to send the stock by mail. The next day she accepted the offer, and stated the stock was with a trust company. In a telegram dated the 26th, he informed her he had sold the stock to another trust company, "agent of the purchasers to purchase at $500 per share the majority of the stock" of the ferry company, and asked her to direct the bailee of the stock to deliver it to him, and she on the same day gave such directions, but too late to be complied with on that date, which was Saturday. He had already in writing subscribed to a sale of the stock to the trust company. At nine o'clock p. m. on Monday the 28th, the bailee delivered the stock to the trust company, "agent of the purchaser," who was an undisclosed railway company, and a check in payment was given two days later to the bailee. Another railroad company wanted control of the ferry company, and on the evening of the 26th, after he had contracted for the sale of the stock, defendant knew that another trust company, acting for said other rail-

Clubb v. Scullin.

road, had offered $600 a share for a majority of the stock. Competitive bidding for the stock became active, and the selling price reached $1500 per share by May 2d. Defendant did not make known to the curatrix that he was interested in the trust company that was acting as purchasing agent for the railroad company. *Held, first,* that when defendant's offer was accepted by plaintiff's curatrix and she directed the bailee to deliver the stock, the sale was complete, and the bailee thereafter held the stock as the agent of the buyer, and thereafter defendant had no legal right to withhold possession from the buyer; *second,* defendant was not a general agent, empowered to act with judgment and discretion, but one with restricted duties, which he performed, and is not liable to plaintiff for failure to obtain $1500 instead of $500 per share for his stock; and, *third,* his agency being restricted to mere ministerial acts, fidelity to his principal did not require defendant to inform the curatrix that he was a shareholder in the trust company that was the purchasing agent of the purchasing railroad company.

4. ———: **Bailee as Agent of Purchaser.** Where the owner of stock accepts an offer for it through her agent and directs her bailee to deliver it to her agent, the bailee thereafter is the agent of the buyer, and the seller's agent has no right to withhold its possession from the buyer.

5. ———: **Restricted Agent: Duty to Get Highest Price: To Disclose Interest.** An agent confined to the acceptance of a fixed price in the sale of stock and its delivery and the receipt of the money at that price, is a restricted one, and he is not charged with the exercise of discretion and judgment in selling the property, but his acts being purely ministerial he is not liable to his principal if he fails to get the highest market price. Nor is he charged with the duty of disclosing his interest as a stockholder in the trust company which acts as purchasing agent of the purchasing railroad company, where he reaps no profit from the sale.

6. ———: **Offer Accepted: Liability of Agent for Higher Price.** Where the defendant telegraphed the owner of certificates of stock that he had an offer of $500 per share therefor, and she wired her acceptance and he thereafter telegraphed her that he had sold the stock to a certain trust company, which was the truth, and she wired to the custodian of the certificates to deliver them to him, the transaction was complete, and thereafter the custodian held them as agent of the purchaser; and her agent was thereafter under no obligation to obtain a higher price for the certificates, though they had not then been actually delivered by the custodian to the purchaser, and though the selling price rapidly increased within the next two days and the competition for them was spirited and active, and though

he knew of said increased selling price before the certificates were actually delivered. If there was no increase in the selling price before he subscribed a contract in her name for the sale of the stock at the price mentioned, and her acceptance thereof and direction to the custodian to deliver them, any knowledge he thereafter acquired of the increased price came too late, and he is not liable for a failure to get a higher price than the one named.

Appeal from St. Louis City Circuit Court.— *Hon. Robert M. Foster*, Judge.

Affirmed.

*W. Hall Trigg, W. W. Henderson* and *W. M. Williams* for appellant.

(1) Without distinction as to whether an agency be one for hire, or undertaken gratuitously, it is incumbent on the agent to bring to the discharge of his duties the utmost of good faith—a full and frank disclosure to his principal of every material fact coming to his knowledge and affecting his principal's rights and interests. Reinhard on, Agency, sec. 231; Eddy v. Livingston, 35 Mo. 492; Marshall v. Ferguson, 94 Mo. App. 175; Funkhouser v. Ingles, 17 Mo. App. 232; Husaker v. Sturgis, 29 Cal. 142; Anthony v. Smith, 28 Tenn. 508; Casey v. Casey, 14 Ill. 117; Dennis v. McCagg, 32 Ill. 440; Porter v. Woodruff, 36 N. J. Eq. 174. Notwithstanding an agent has been expressly authorized by his principal to sell property of the latter at a given sum, he, nevertheless, owes to the latter the duty of advising him if more favorable terms can be obtained, and if he fails to communicate such information, and sells on terms less advantageous than were to be had, he thereby renders himself liable for the difference between the sum received and what he might have obtained. Holmes v. Cathcart, 88 Minn. 213; Hagenmyer v. Marsh, 37 Minn. 6; Prince v. Dupuy, 163 Ill. 417; Carpenter v. Fisher, 55 N. E. 479; Tilleny v. Wolverton, 46 Minn. 256; Hall v. Gambrill, 88 Fed.

209; Edmondstone v. Hartshorn, 19 N. Y. 1; Reinhard on Agency, sec. 244; Tiffany on Agency, p. 426; Clark & Skyles on Agency, p. 1643; Mechem on Agency, sec. 538; 1 Am. & Eng. Ency. Law (2 Ed.), 1069; Morris v. Taylor, 49 Ill. 17; McNutt v. Dix, 83 Mich. 328; Kellogg v. Keller, 27 Ill. App. 244; Logie v. Gillies, 4 New Zealand L. Rep. 65; Townsend v. Van Tessel, 8 Daly, 26; Ring v. Potts, 36 New Brunswick, 42. One who is president and a member of the directorate of a corporation, sustains to the individual stockholders a fiduciary relationship. Whilst not a trustee in the restricted sense in which the term is usually employed, he is, nevertheless, one *sub modo*. Clark on Corporations (2 Ed.), p. 523; Mulvane v. O'Brien, 49 Pac. 607; Stewart v. Harris, 69 Kas. 498; 3 Clark & Marshall on Corporations, sec. 747; Bent v. Priest, 10 Mo. App. 543; Bent v. Priest, 86 Mo. 475; Goodwin v. Canal Co., 18 Oh. St. 169; Cook v. Sherman, 20 Fed. 167; 25 Am. Law Reg. p. 125; 26 Canada L. J. p. 66; Bigelow on Frauds, p. 330. (2) Inasmuch as the objectionable feature of an adverse interest held by an agent consists in its tendency to abate that measure of loyalty to which the principal is entitled, not only the nature, but also the extent, of such an interest becomes a pertinent matter of inquiry. Blodgett Co. v. Farmer, 41 N. H. 398; Rex v. Bingham, Hornsham Spring Assizes, 1811; Credit Assn. v. Coleman, L. R. 6 H. L. 189; Dunne v. English, 31 L. T. Rep. 75. Where fraud is the gravamen of the action, the range of inquiry is greatly extended. Erfort v. Consalus, 47 Mo. 209; Mosby v. Comm. Co., 91 Mo. App. 500; Bigelow's Law of Fraud 146-7; 1 Elliott on Evidence, Sec. 184; 14 Am. & Eng. Ency. Law (2 Ed.) 195; King v. Railroad, 29 N. J. L. 82. All matters logically relevant are legally so, unless rendered inadmissible under some rule of exclusion. 16 Cyc. Law & Proc., pp. 1110-1112; Thayer on Evidence p. 265; Wigmore on Evidence, secs. 118, 119 and 389. (3) Information sufficient to put one on inquiry is

tantamount to actual knowledge of every fact which could have been learned upon a diligent following up of such notice. 21 Am. & Eng. Ency. Law (2 Ed.) p. 584. Where an agent has violated his trust by selling the property of his principal at a price less than he knew could be obtained therefor, neither the intrinsic nor the market value of the property is material in determining the measure of recovery. The question is one not of value, but of price—the difference between the price at which the agent sold it and such better price as he might reasonably have procured. Hamilton v. Cunningham, 2 Brock, 350; Logie v. Gillies, 4 New Zealand L. Rep. 65; Townsend v. Van Tessel, 8 Daly, 26; Ring v. Potts, 36 New Brunswick, 42; Story on Agency (9 Ed.) 259; Sutherland on Damages (3 Ed.) sec. 770. (4) Declarations and admissions of a guardian, in order to bind the ward, must be—if anything—even more strictly a part of the res gestae than is required in other relationships of somewhat analogous character. 15 Am. & Eng. Ency. Law (2 Ed.) 71; 1 Ency. Ev. p. 568; Woerner's Am. L. Guardianship, sec. 53. (5) The right of jury trial rests on constitutional guaranty, and every inference of fact of which a plaintiff's evidence is susceptible must be accorded it in passing upon a demurrer to such evidence. Const. of Mo., art 2, sec. 28; Pauck v. St .Louis Co., 951 Mo. 467; Buesching v. Light Co., 73 Mo. 219; Knorpp v. Wagner, 195 Mo. 637; Mockowik v. Railroad 196 Mo. 550. When it has been shown that the relation of principal and agent existed between the parties litigant, and that the defendant, acting in the plaintiff's behalf, sold the property of the latter at a price less than he knowingly might have obtained, the plaintiff's case is made, and it then devolves upon the defendant to justify his conduct. Webb v. Marks, 51 Pac. 518; Lamb v. Fairbanks, 48 Vt. 519; Humphrey v. Trans. Co., 65 N. W. 13; Coal Co. v. Phelps, 95 Ind. 271; Porter v. Woodruff, 36 N. J. Eq. 174; Brock v. Barnes, 40 Barb.

(N. Y.) 521; 1 Am. & Eng. Ency. Law (2 Ed.) 1082; 2 Ency. Ev., p. 812; 10 Ency. Ev., p. 38.

*Jacob Klein* and *E. S. Robert* for respondents; *Robert & Robert* of counsel.

(1) Every material point raised in this case has been heretofore decided by this court in the other Wiggins Ferry cases, adversely to appellant's contention. Newman v. Trust Co., 189 Mo. 423; Wann v. Scullin, 210 Mo. 429; State ex rel. Wann v. Dickson, 213 Mo. 66. (2) The failure of the defendant to disclose to the plaintiff the fact that he was a stockholder in the Chicago, Rock Island & Pacific Railway Company and in the Mercantile Trust Company was not a fraud upon the plaintiff, and did not disqualify defendant from receiving the certificates of stock from the St. Louis Union Trust Company and delivering the same to the Mercantile Trust Company under the terms of the telegram of April 24th, and does not entitle plaintiff to recover against him. Wann v. Scullin, 210 Mo. 486; Hardwick v. Jones, 65 Mo. 54; Kitchen v. Railroad, 69 Mo. 224; Gaty v. Sack, 19 Mo. App. 470; Van Dusen-Harrington Co. v. Jungeblut, 75 Minn. 299; Alexander v. Williams, 14 Mo. App. 13; Ins. Co. v. School Dis., 25 C. C. A. 492; Northrup v. Ins. Co., 48 Wis. 420; 1 Thompson on Corporations, sec. 1071; 1 Morawetz on Corporations, sec. 521. (3) "The agency of the defendant was an exceedingly limited one and did not require of him judgment and discretion as to holding the stock." The rule requiring the agent to disclose his adverse interest applies only to agents who are entrusted with a discretion in the matter of the agency, and is not applicable where the principal makes his own bargain and the agent is a mere ministerial one, without any discretion. Wann v. Scullin, 210 Mo. 477; Tiffany on Agency, p. 418; Mechem on Agency, sec. 67; Pollatschek v. Goodwin, 40 N. Y. Supp. 682; Mining Co. v. Fox, 4 Ired. Eq. 61; Spalding v. Mat-

tingly, 89 Ky. 83; Knauss v. Brew Co., 142 N. Y. 70; Ranney v. Donovan, 78 Mich. 318; Kilbourn v. Sunderland, 130 U. S. 505; Atwood v. Railroad, 85 Va. 966. (4) In an action for fraud and deceit, where concealment is the ground of the action, it must appear that plaintiff relied upon defendant to make disclosure of the fact concealed and that the concealment was a moving inducement to the plaintiff's change of position. That rule applies to this action, which is one for an alleged breach of duty by an agent. The cause of action pleaded is not based upon the ground that the agency was fraudulently procured. Therefore, the alleged concealment cannot be relied upon by plaintiff as a ground for recovery. Wann v. Scullin, 210 Mo. 487; 14 Am. & Eng. Ency. Law (2 Ed.), p. 113; Wannell v. Kerm, 57 Mo. 478; Bailey v. Smook, 61 Mo. 213; Dunn v. White, 63 Mo. 181; Powell v. Adams, 98 Mo. 598; Feller v. McKillip, 100 Mo. App. 664; Tinker v. Kier, 195 Mo. 183; 20 Cyc. 23 and 40; Jordan v. Pickett, 78 Ala. 331. (5) The plaintiff's evidence shows an accord and satisfaction as to the subject-matter of this suit. The release of the Trust Co., and the Railway Co. of May 2, 1902, accepted by plaintiff's guardian, was executed and given at the time Mrs. Clubb endorsed his certificate for 145 shares; it was a full acceptance and ratification of the contract signed by Mr. Scullin. Newman v. Trust Co., 189 Mo. 423; McCormack v. St. Louis, 166 Mo. 315; Coal Co. v. St. Louis, 145 Mo. 651; McGregor v. Ware Co., 188 Mo. 611; St. Joseph v. Hull, 72 Mo. App. 403; Andrews v. Stubbs Co., 100 Mo. App. 599; Perkins v. Hedley, 49 Mo. App. 556; Cornelius v. Rosen, 111 Mo. App. 619; Lightfoot v. Hurd, 113 Mo. App. 612; Rogers v. Pub. Co., 118 Mo. App. 1; Railroad v. Clark, 178 U. S. 353; U. S. B. & S. Co. v. Thistell, 69 C. C. A. 651; Nassoily v. Tomlinson, 148 N. Y. 326; Jackson v. Volkening, 80 N. Y. Supp. 1102; Goss v. Rishel, 85 N. Y. Supp. 1045; St. Regis Co. v. Tonawanda Co., 94 N. Y. Supp. 946;

Gas Co. v. Johnson, 123 Pa. St. 576; Keck v. Hotel, 89 Iowa, 202; Truax v. Miller, 48 Minn. 62; Creighton v. Gregory, 142 Cal. 34; Leather Co. v. Foyer, 104 Ill. App. 268; Coal Co. v. Parlin, 215 Ill. 244; Richardson v. Taylor, 100 Me. 175.

## STATEMENT.

BOND, C.—Plaintiff, a minor when this suit was brought, now of full age and a party to the cause, alleges in his petition that on the 25th of April, 1902, his mother, Eleanore Clubb, as his guardian and curatrix, held 145 shares of stock in the Wiggins Ferry Company, which defendant agreed to sell for the highest market price; that defendant was then a stockholder in the Mercantile Trust Company and "largely interested" in the Chicago, Rock Island & Pacific Railway Company; that said Railway Company was then desirous of procuring control of the Wiggins Ferry Company, through the purchase of a majority of its capital stock; that defendant procured the employment of the Mercantile Trust Company as purchasing agent of said Railway Company; that defendant agreed with said Railway Company to assist its purchasing agent in procuring a majority of the capital stock of said Wiggins Ferry Company at the price of $500 per share; that at said dates and afterwards the Mississippi Valley Trust Company of St. Louis, as purchasing agent for the St. Louis Terminal Association of St. Louis, was also endeavoring to purchase and acquire the stock of said Wiggins Ferry Company, which was known to the defendant; that defendant sold plaintiff's shares to the said Railway Company through its purchasing agent for the sum of $500 per share, amounting to $72,500, and delivered the same to the purchaser, and caused a transfer to be made of said stock on the books of said Wiggins Ferry Company; that while so doing, defendant "wrongfully and fraudulently concealed from plaintiff and from plaintiff's said guardian the fact that he was in any manner interested in either the said Railway

Company or its purchasing agent, or was in any wise acting on behalf of either of said companies;" that defendant broke his agreement and acted in violation of his duty as agent in selling said shares of stock for the sum above named, at a time when he had knowledge that they could be sold for $1500 per share, and withheld that knowledge from plaintiff's guardian and curatrix, well knowing she was ignorant of said fact; that by defendant's fraudulent refusal to sell said shares at the value of $1500 each, plaintiff lost the sum of $145,000, for which he prayed judgment.

The answer was a general denial, coupled with a second defense setting forth the following telegram:

St. Louis, April 24, 1902.

Ellen Clubb
S. C. Clubb,
The Grafton, Con. Av., Washington, D. C.

I am offered five hundred dollars per share for a majority or all of the stock of the Wiggins Ferry Co. Have agreed to sell all my holdings and strongly recommend you to do likewise. If you concur in my recommendations, send me your stock by mail at once and if the owners of a majority of stock agree to sell I will forward to you five hundred dollars per share for your holdings on or before May 5th next. Please regard this as strictly confidential. Wire reply immediately.

John Scullin,
Pres't Wiggins Ferry Co.

That pursuant to an authority from said Eleanore Clubb, plaintiff's guardian and curatrix, defendant signed an agreement to sell the shares of stock of this plaintiff and an equal number of shares of his sister and 179 shares of the said Eleanore Clubb on the terms set forth in the above telegram; that said Eleanore Clubb delivered all of the shares of this plaintiff and of his sister and 34 shares of her own, but failed and refused to deliver the remaining 145 shares of her own, and demanded as a condition of said delivery the payment of the further sum of $145,000; that this defendant had

235 Sup.—38

thereafter no further connection with the matter, but the said Eleanore Clubb thereafter dealt directly with the Mercantile Trust Company, and entered into an agreement with it on the following terms, to-wit:

St. Louis, May 2, 1902.

The Mercantile Trust Company having purchased from Eleanore Clubb, four hundred sixty-nine (469) shares of the capital stock of the Wiggins Ferry Company for the total sum of $379,500, hereby releases and discharges said Eleanore Clubb from any and all claims for damages or otherwise on account of her agreement to sell said shares or any thereof to said Mercantile Trust Company and agree to keep her harmles from any and all such claims.

Mercantile Trust Company.

By Festus J. Wade, President.

Accepted.

Eleanore Clubb.

The above mentioned purchase of 469 Shares of stock in the Wiggins Ferry Company, and the release of the said Eleanore Clubb, were made with our approval and sanction, and we ratify and confirm the same as done for our benefit.

May 2, 1902.

The Chicago, Rock Island & Pac. Ry. Co.

By Robert Mather, Vice President.

That said agreements between the said Eleanore Clubb and the Mercantile Trust Company as the purchasing agent of said railway, and the said railway on its own behalf were in full accord and satisfaction of all claims and demands of whatever nature growing out of the sale of any part or all of the said 469 shares of capital stock of the Wiggins Ferry Company belonging to the said Eleanore Clubb and plaintiff and his sister.

The reply was a general denial.

Upon the trial of these issues the evidence tended to show that, consequent to the purchase of the St. Louis & Colorado Railroad, the Chicago, Rock Island & Pacific Railway desired an eastern entrance into the city of St. Louis by acquiring a majority of shares of stock of the Wiggins Ferry Company; that to accomplish this purpose it employed the Mercantile Trust

Company of St. Louis as a purchasing agent of said stock; that defendant was president of the Wiggins Ferry Company and the owner of a large number of the shares of its capital stock; that the plaintiff and his sister and mother were owners of capital stock of said Wiggins Ferry Company in the following proportion: 145 belonging to plaintiff; same amount belonging to his sister, and 179 belonging to their mother; that after the receipt of the telegram addressed to her by defendant, and set out in defendant's answer, Mrs. Eleanore Clubb telegraphed in reply, as follows:

Baltimore, Md., April 25, 1902.

Mr. John Scullin,
    Pres't Wiggins Ferry Co., St. Louis.
    Accept offer for myself, Helen and Sam. Certificates with Union Trust Company.

Eleanore B. Clubb.


In reply to which defendant telegraphed her, as follows:

St. Louis, Mo., April 26, 1902.

(Received at Baltimore April 27, 1902)
    Mrs. Eleanore B. Clubb.
        303 Oakdale Road, Roland Park.
    Upon authority of your telegraphic reply to my telegram of April 24th, I have accepted in writing for you, Helen and Sam the proposition of Mercantile Trust Company agent of purchasers to purchase at five hundred dollars per share the majority of the stock of Wiggins Ferry Company. Please direct Union Trust Company to deliver certificates to me or to Mercantile Trust Company immediately.

John Scullin.


Mrs. Clubb on the same day sent the following telegram:

Baltimore, April 26, 1902.

George A. Mills.
    Sec'y Union Trust Company, St. Louis, Mo.
    Sold Wiggins at five hundred. Deliver all certificates you have Scullin.

Eleanore B. Clubb.

Clubb v. Scullin.

That at 1:09 p. m. Monday, April 28, 1902, Mrs. Clubb sent the following telegram to defendant:

Baltimore, Md., April 28, 1902.

John Scullin, Pres't.,
    Wiggins Ferry Company.
    St. Louis Trust Company can deliver certificates for 324 shares. The 145 shares are in my safe deposit box. I shall have to go get them. Would the third of May be time enough to deliver them? Answer.

Eleanore Clubb.

On Monday, April 28, 1902, about 9:30 o'clock p. m., the St. Louis Union Trust Company delivered to defendant the following shares of stock (as per notation on its books): "Helen, 145 shares at $500.00, April 30, 1902, $72,500; Sam, 145 shares at $500.00, April 30, 1902, $72,500; Eleanore, 34 shares at $500.00, April 30, 1903, less $6,000 for her loan, leaving $11,000."

That the dates of April 30, 1902, of said interest were incorrect; that the stock was in fact delivered to defendant, as above stated, two days prior, but the check given by the Mercantile Trust Company in payment was received on the date entered above, and was; to-wit:

$156,000                                           April 30, 1902.
    Pay to the order of St. Louis Union Trust Company one Hundred and fifty-six thousand dollars.
                                George W. Wilson, Treasurer.
Treasurer's check Mercantile Trust Company.

That Mrs. Clubb left Baltimore for St. Louis and got there at two o'clock on May 1, 1902, and was visited that evening by the defendant Scullin and the representative of the Mercantile Trust Company; that she had learned before this time of the competitive bidding for the Wiggins Ferry Company stock and its advanced price; that defendant told her that the "Rock Island people" were trying to buy the stock, and that the defendant sold his and gave her the reason

which influenced him; that before parting the defendant said to her, "Don't you take less than $750 a share for your stock" (referring to the 145 shares of stock which she had not delivered through him); that she did say, in reply, she would probably sell to the Mercantile Trust Company; that she subsequently sold these shares of stock to the Mercantile Trust Company for $1500 per share, as shown in the written contract of May 2, 1902, between herself and the Mercantile Trust Company, and approved on the same date by the Chicago, Rock Island & Pacific Railway Company, and hereinbefore set out; that at the time of the transactions evidenced by these writings, she indorsed the previously delivered shares belonging to her two children, and the remaining 145 shares belonging to herself, which had not been delivered until the making of this contract, on the 2nd of May, 1902; that upon the consummation of this transaction she received the check from the Mercantile Trust Company, on the same date, for $217,500; that before closing this transaction she had been offered $1,000 per share for her remaining shares of stock by the Mississippi Valley Trust Company, as the representative of the Terminal Railroad Association.

The competitive bidding for the stock of the Wiggins Ferry Company was begun by the Mississippi Valley Trust Company, as agent for the Terminal Association, on Saturday, April 26, 1902, and continued through the following Sunday and until the first few days of May, 1902, when, inferably, some agreement was reached through which the Rock Island Railway Company secured an eastern entrance into the city of St. Louis. Defendant had notice of the beginning of the competitive bidding on Saturday evening, April 26, 1902, when a verbal proposition was communicated to the members of the board of directors of the Wiggins Ferry Company through Mr. Church; but this proposition was not in writing, nor the name of the

proposer given until signed by the Mississippi Valley Trust Company, about five o'clock Saturday afternoon. When thus executed it offered $500 per share for Wiggins stock and $100 more if a majority was gotten. There is no evidence that its written terms were communicated to defendant prior to the delivery by him of the Clubb stock, on Monday, April 28, 1902.

At the conclusion of all the evidence, the court gave an instruction that plaintiff was not entitled to recover, whereupon he took a nonsuit with leave. Upon the overruling of his motion to set aside the same, he appealed to this court.

## OPINION.

I.   No question can arise in this case as to the legal validity of the contract made by the curatrix of plaintiff through the defendant, whereby his shares of stock in the Wiggins Ferry Company were transferred and delivered to the Mercantile Trust Company, on April 28, 1902. Whether the curatrix, as such, was empowered to transfer the legal title as well as the possession of said property is not open to review in this case. The reason is, that the sole cause of action pleaded in the petition is the alleged failure of the defendant, as agent, to get the best market price when he made the sale of the shares of stock. Plaintiff does not question the legal effect of the act of his curatrix or defendant as her agent in the matter of devolving the full title to the shares of stock when they were delivered to the Mercantile Trust Company on the 28th of April, 1902. Indeed, he affirms the conveyance of his title and predicates his right to a further recovery solely on the ground that the defendant fraudulently received a less price than could have been gotten. We are thus relieved from any consideration of the power of the curatrix to convey the personal property of her ward by virtue of the peculiar relation which she bears to it under the laws of this State. [Judson v. Walker, 155 Mo. 166.]

Hence, there were only two questions left in this case: First, whether the contract of sale was made before the shares were delivered to the purchaser, to-wit, April 28, 1902, or when the curatrix subsequently indorsed the shares and made the written contract (in which defendant took no part) on May 2, 1902. Second, whether in his connection with the sale defendant is chargeable with a breach of contract or a violation of his duty as agent.

In reviewing the action of trial courts in compelling and refusing to set aside a nonsuit taken with leave, every reasonable inference which can be drawn from plaintiff's evidence will be assumed to be true, despite the possibility of contradictory inferences or conflicting evidence. For the law is settled that all issues either as to inferences or facts must be tried by the jury. Hence, it is only when the evidence as well as the reasonable inferences therefrom are undisputed, and when the applicatory law precludes any recovery, that trial courts are justified in withdrawing a case from the jury. [Forbes v. Dunnavant, 198 Mo. 193; Mockowik v. Railroad, 196 Mo. 550.]

We will, therefore, take it for granted in the present case that the sale of plaintiff's shares of stock was completely executed as to the transfer of title, as well as possession, by virtue of the contract, whereunder they were turned over on the 28th of April, 1902. For, obviously, if the plaintiff's stock was not sold until the contract between his curatrix and the purchaser, of May 2, 1902 (in which defendant had no lot), there could be no recovery in this suit, whatever right of action plaintiff might have against his curatrix for failing to account to him for his proportion of the proceeds of that sale.

With reference to the transaction to which the view of the court is thus restricted, the data by which it is to be judged comprise certain telegraphic communications between plaintiff's curatrix and defendant

and some oral testimony. There is no dispute as to either. Unless, therefore, they afford the basis of a legitimate inference that defendant either broke his agreement or violated his duty in so far as he acted as agent, there can be no recovery against him.

The contract between curatrix and defendant and the relations arising therefrom are clear and simple. The defendant gave notice to the curatrix of an offer for her stock and that of all or a majority of the holders of such stock, which he had accepted for his own, and advised her also to accept, and agreed to send her the purchase price if the terms of the offer were met, and requested the transmission of her stock. The curatrix accepted the offer for herself and her two children, and directed the Trust Company, where it was deposited, to turn it over to defendant. This direction was given Saturday, April 26, 1902, too late to be complied with on that day, but was complied with on Monday morning, April 28, 1902, when the stock was placed in the hands of the buyer. A check in payment was given two days thereafter, the proceeds of which, so far as plaintiff's shares are concerned, were entered to his credit on the books of the Trust Company, where his stock had been deposited. In the performance of these acts defendant acted in strict accordance with his agreement with the curatrix of plaintiff, and in perfect performance of his duty to the extent of the agency assumed in his contract. When the offer conveyed to plaintiff's curatrix was accepted, and when she had directed the bailee of the property to deliver it, the sale was complete in every element (since the power of the curatrix to sell is affirmed in the petition), and the bailee thereafter held the shares of stock as the mere agent of the buyer. [Erwin v. Arthur, 61 Mo. 387; Allgear v. Walsh, 24 Mo. App. 134.]

These things were done on the 24th, 25th and 26th of April, 1902. On the latter date, and until the Monday following, the St. Louis Union Trust Company

held possession of the shares of stock now sued for as bailee of the Mercantile Trust Company, which had acquired the full legal title thereto when the curatrix accepted this proposal to buy, and instructed the custodian of the shares to deliver them. After this date the title to the shares was in the buyer, and neither the Trust Company nor the defendant had any legal right to withhold them from the possession of the buyer. The action of the defendant and the St. Louis Trust Company in the delivery of the shares of stock was under the mandate of the curatrix. The only responsibility under which the defendant rested thereafter, as far as his agency was concerned, was the payment of the price. This was shown to have been paid according to the terms of the contract two days later.

The agency entrusted to defendant was one which carried no power of judgment or discretion in the performance of the acts prescribed. It charged him neither with the duties nor responsibilities of a general agent. An agency confined to the acceptance of a fixed price and the turning over of the property for which it is paid is not one which saddles the agent with the same liabilities towards his principal which attach, as a matter of law, when one person gives another the power to exercise full judgment and discretion in the sale of property. The latter agency would impose the duty of obtaining the highest market price, and the further duties of a full disclosure of any adverse interest on the part of the agent, and complete loyalty and good faith in the performance of the service, in the doing of which the agent would be permitted to reap no personal profit or advantage, other than his compensation as fixed by contract or by law. It would make no difference whether the agency is for hire or is gratuitous, provided it is actually undertaken and entered upon by the agent.

These are familiar principles of law, and are well sustained by the numerous authorities cited in the

brief of the learned counsel for plaintiff. But these
principles of law have no application to mere minis-
terial acts involving on the part of the agent no power
of judgment or discretion, but only a compliance with
particular and definite instructions which have been
predetermined and specifically prescribed by his prin-
cipal. This distinction is clearly pointed out in three
cases that have been before this court, where the rela-
tionship of this defendant as agent was substantially the
same as the one which he assumed in this case. [New-
man v. Mercantile Trust Co., 189 Mo. 423; Wann v.
Scullin, 210 Mo. 429; State ex rel. v. Dickson, 213 Mo.
66.]

Under the rulings announced in those cases, we
hold that it was not incumbent on defendant in the case
at bar to inform the curatrix of plaintiff that he was a
stockholder in the Mercantile Trust Company, pur-
chasing agent of the buyer, or that he was largely
interested in the securities of the Railroad Company
which was seeking to acquire this stock, and that he
violated no duty under the agency imposed on him in
this case in failing so to do.

II. On Saturday, April 26, 1902, the defendant'
acting under the directions of the curatrix of plaintiff'
had accepted the contract of purchase for plaintiff's
stock. The notice given of this sale to the custodian
of that stock, and the request to turn it over, com-
pletely transferred the legal title, under the pleadings in
this case. Up to that date there is no hint in the record
that a higher price than that paid for plaintiff's stock
had been offered by any one. On the afternoon of
that day, when Mr. Church informed the defendant
and other directors of the Wiggins Ferry Company that
a proposition had been made to buy its stock at $600
per share, the defendant replied that this proposition
came too late; that the purchaser under the proposition
theretofore made had already obtained a majority of the

stock of the Wiggins Ferry Company. He added,
"I wish you had had it sooner—I am sorry you
did not have it sooner." No name had been given
of the proposed purchaser nor any written prop-
osition when this colloquy took place. Later in
the same day, not after five o'clock, Mr. Church
obtained from the Mississippi Valley Trust Com-
pany a proposition to pay $500 flat for the shares
of the Wiggins Ferry Company and $100 additional,
provided it obtained a majority of the stock. This
was the earliest, of any specific, proposition shown to
have been made in this case other than the proposition
which had been accepted by defendant for his own
shares of stock, and which he had also accepted for the
curatrix of plaintiff. There is no evidence in the
record that the defendant had any knowledge of the
specific terms contained in the written offer of the
Mississippi Valley Trust Company until after the
delivery of plaintiff's shares to the Mercantile Trust
Company.

It was then too late for the defendant to retake
the shares of stock and sell them to a competitor. The
reason is, that the terms of purchase expressed in the
first telegram sent by defendant to plaintiff's curatrix,
after their acceptance by her authority, became a
binding contract on the part of the Mercantile Trust
Company the moment it should accept the stock. This
was distinctly ruled when the same contract was before
this court in the case of Newman v. Trust Co., 189 Mo.
l. c. 446, where, in analyzing the legal effect of the
agreement created by the acceptance of the share-
holders of the proposition to purchase expressed in said
telegram, and by the subsequent acceptance of the
shares by the Mercantile Trust Company, the court
said: "The acceptance of the stock was obligatory
upon the Trust Company if a majority of the stock-
holders on or before May 5, 1902, agreed to sell their
stock in like manner; otherwise, the acceptance was

optional with the Trust Company until that date. This is the plain and obvious meaning of the contract. The Trust Company exercised its option by accepting the stock and paying the plaintiff the purchase price therefor on the 28th of April, 1902, in the manner set out in the statement. When this was done the sale was complete and the title to the stock passed to the Trust Company, in whose possession it then was."

So, in the case at bar, the instant the Mercantile Trust Company accepted the stock and agreed to pay therefor, the full title to the stock vested in it, and the right to receive the price vested in plaintiff's curatrix. [Newman v. Trust Co., supra; Peycke Brothers v. Ahrens, 98 Mo. App. 456; R. S. 1909, sec. 2784.]

In this status of affairs, it is clear that defendant was guilty of no breach of his contract or his duty as gratuitous agent, in that, on the Monday following, he handed over to the Mercantile Trust Company the shares of stock which were delivered to him by the St. Louis Trust Company, under an instruction given it so to do by the curatrix of plaintiff, of date Saturday, April 26, 1902.

The reason why defendant did not commit a failure of duty in so doing is, that at the time in question all the conditions of the purchase by the Mercantile Trust Company had been fulfilled and the title to plaintiff's shares of stock was in that company; and its custody in the St. Louis Union Trust Company was held for the benefit of the Mercantile Trust Company, to whom the curatrix had instructed it to be delivered. [Williams v. Evans, 39 Mo. 204; Harding v. Manard, 55 Mo. App. 364.]

The defendant Scullin had thenceforth no legal right to prevent the delivery of said shares of stock in question by the custodian to the purchaser, and he would have assumed responsibility for the price offered if he had done so. We, therefore, hold that the defendant was guilty of no wrong in not attempting to rescind

the sale so made, and that he neither broke his agreement nor violated his duty as agent in the manner in which he acted.

III.   The learned counsel for appellant complains of the exclusion of testimony tending to show the making of the sales of the Wiggins Ferry Company stock on Sunday, the 27th, and Monday, the 28th, as evidence of the market value the stock had acquired at those dates.   It would make no difference in the view we have taken of this case whether this evidence had been admitted or not.   The defendant, even if he had full knowledge the stock had risen greatly in value, could not be charged with any delinquency as agent in this case, for the reason that the contract made by the curatrix was consummate, after her acceptance of its terms and notification to the custodian of the stock on the previous Saturday.   It follows that the defendant had no power, and was charged with no duty to unmake her contract, or to commit a breach thereof, or to do any other act which would absolve her from a strict compliance with its terms.   It is, therefore, immaterial that the trial court excluded the evidence in question.

Our conclusion is that the judgment in this case must be affirmed.   *Roy* , *C.*, concurs.

PER CURIAM.—The foregoing report of the commissioners is hereby adopted as the opinion of the court.